51911. SHELLENBERGER v. TANNER et al.
51912. MODESTO v. TANNER et al.
51914. REBEL AVIATION, INC. v. TANNER et al.
51915. POWER v. TANNER et al.

ARGUED MARCH 2, 1976 — DECIDED APRIL 5, 1976 — REHEARING
DENIED APRIL 16, 1976. CASE NO. 51914 REHEARING DENIED APRIL
16, 1976 AND APRIL 21, 1976 — 

*Swift, Currie, McGhee & Hiers, Glover McGhee,* for
appellant (case no. 51911).
*Stanford & Dunaway, Richard L. Stanford,* for
appellant (case no. 51912).
*E. R. Smith, Jr., H. J. Quincey, Robert F. Bourk,* for
appellants (cases nos. 51914 and 51915).
*Neely & Player, Edgar A. Neely, III, William F.
Welch, Donner, Brown & Rosenbluth, Jerrell P.
Rosenbluth, Brandel, Olson, Johnson & Erickson,
Richard Swedberg,* for appellees.

DEEN, Presiding Judge.
1. *Development of the Exercise of Jurisdiction Over
Nonresident Defendants.*
Any analysis of the power of a forum's courts to
exercise in personam jurisdiction over a nonresident
defendant must begin with the decision of the United
States Supreme Court in Pennoyer v. Neff, 95 U. S. 714 (24
LE 565). The court there held that the due process clause
of the Fourteenth Amendment is violated when a court
renders a personal judgment against a nonresident
defendant over whom jurisdiction has not first been
obtained; the requisite personal jurisdiction cannot be
supplied by service of process outside the territory of the
forum or through publication. Jurisdiction over
nonresidents was held to be predicable upon either their
presence within the forum or upon their waiver of
objection to the exercise of jurisdiction by the forum's
tribunals. Reduced to its legal essence, the holding in
Pennoyer v. Neff was that ". . . The foundation of
jurisdiction is physical power. . ." McDonald v. Mabee, 243
U. S. 90, 91 (37 SC 343, 61 LE 343). Notwithstanding such
language in the cases, it is clear (and the court has itself
recognized[1]) that when the traditional notion of in

---

[1]McGee v. International Life Ins. Co., 355 U. S. 220,
222 (78 SC 199, 2 LE2d 223).

personam jurisdiction met head-to-head with the phenomenon of American industrialization and its consequent "national" economy, resort was made to judicial sanctioning of "legal fictions" as the bases for exercising jurisdiction over nonresident corporations. The following theories are examples of such expediencies: (1) "Consent" to suit[2]; (2) "Presence" in the forum[3]; and (3) "Doing business" in the forum thereby submitting to its jurisdiction.[4]

It was not until the decision in International Shoe Co. v. Washington, 326 U. S. 310 (66 SC 154, 90 LE 95), that such "fictions" were discarded and the impetus toward expansion of the permissible scope of in personam jurisdiction over nonresidents was heralded by a new test: "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Id. 326 U. S. 316. In rejecting the prior "fictions" and in adopting the "minimum contacts and fair play and substantial justice" rule, the court propounded a more flexible test for delineating the scope of in personam jurisdiction over nonresident defendants — a test to which it has adhered in all subsequent decisions on the issue. Unhappily however, the flexibility gained has too often been at the cost of confusion over application of the International Shoe test to differing factual situations. This confusion has no doubt been the result of a rush by the states to enact "long arm statutes" so as to facilitate suits by their resident

[2]See e.g., Lafayette Ins. Co. v. French, 59 U. S. (18 How. 404) (15 LE 451); St. Clair v. Cox, 106 U. S. 350 (1 SC 354, 27 LE 222).

[3]See e.g., Green v. Chicago, B. & Q. R. Co., 205 U.S. 530 (27 SC 595, 51 LE 916); Philadelphia &c. R. Co. v. McKibbin, 243 U. S. 264 (37 SC 280, 61 LE 70).

[4]See e.g., Henrietta Min. & Mill. Co. v. Johnson, 173 U. S. 221 (19 SC 402, 43 LE 675); St. Louis S. W. R. Co. v. Alexander, 227 U. S. 218 (33 SC 245, 57 LE 486).

plaintiffs against nonresident defendants. Georgia herself is no stranger to either the "long arm statute" or the confusion over its interpretation.

A warning has been issued however to the states and their "long arm" reaction stimulated by International Shoe. In Hanson v. Denckla, 357 U. S. 235 (78 SC 1228, 2 LE2d 1283), the court cautioned that restrictions on the exercise of personal jurisdiction over nonresident defendants are more than a mere guaranty of immunity from inconvenient or distant litigation; they are rather a consequence of a territorial limitation on the power of the forum state. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that state that are the prerequisite to its exercise of jurisdiction over him. And most significantly, the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact between that defendant and the forum itself. The application of the "minimum contacts" rule will vary with the quality and nature of the defendant's activity but it is essential in each case "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." Id. 357 U. S. 253.

Having established the framework for a "minimum contacts" rule, the court was called upon to determine the sufficiency of a single act or transaction by the nonresident in the forum as the basis upon which to predicate in personam jurisdiction. In McGee v. International Life Ins. Co., 355 U. S. 220 (78 SC 199, 2 LE2d 223), jurisdiction was sustained over a nonresident corporation whose sole "contact" with the forum was the policy of insurance at issue; it is "sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." Id. 355 U. S. 223. The McGee decision stands alone as the court's expression on the constitutionality of predicating jurisdiction upon a single act or transaction by the nonresident with or in the forum. This lack of further guidance has resulted in differing interpretations of

McGee itself[5] but the clear and discernible trend of recent authority is to the effect that a single act by the nonresident in the forum, whether it be a contract or a tort, having its impact within the territory of the forum may satisfy the "minimum contacts" test.[6]

From International Shoe's "skeleton" and the subsequent "fleshing out" cases can be gleaned three "rules" by which to judge the power of a forum state to exercise jurisdiction over a nonresident defendant. They are (1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum.[7] It is not necessary that the defendant or his agent be physically within the forum, for an act or transaction by mail may suffice.[8] A single event may be a sufficient basis if its effects within the forum are substantial enough to qualify under Rule 3; (2) The plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum[9]; and (3) If (and only if[10]) the requirements of Rules 1 and 2

---

[5]See Agrashell, Inc. v. Bernard Lirota Co., 344 F2d 583 (holding in McGee limited to suits involving contract of insurance); Webb v. Stanker & Galetto, Inc., 84 N. J. Super. 178 (201 A2d 387) cert. den. 380 U. S. 907 (13 LE2d 795, 85 SC 888) (holding in McGee limited to suits involving contracts in which the forum has a "unique" interest). But see Terasse v. Wisconsin Feeder Pig Marketing Corp., (202 S2d 330).

[6]See e.g., Beck v. Spindler, 256 Minn. 543 (99 NW2d 670); Elkhart Engineering Corp. v. Dormier Werke, 343 F2d 861; Consolidated Laboratories, Inc. v. Shandon Scientific Co., 384 F2d 797; Etzler v. Dille and McGuire Mfg. Co., 249 FSupp. 1; Hamilton Nat. Bank v. Russell, 261 FSupp. 145; Jack O'Donnell Chevrolet, Inc. v. Shankles, 276 FSupp. 998.

[7]Hanson v. Denckla, 357 U.S. 235, 253, supra.

[8]McGee v. International Life Ins. Co., 355 U. S. 220, 223, supra.

[9]International Shoe Co. v. Washington, 326 U. S. 310, 319, supra.

[10] Hanson v. Denckla, 357 U. S. 235, 251, supra.

are established, a "minimum contact" between the nonresident and the forum exists; the assumption of jurisdiction must be found to be consonant with the due process notions of "fair play" and "substantial justice."[11] In other words, the exercise of jurisdiction based upon the "minimum contact" must be "reasonable." And this test for "reasonableness" has frequently been analogized to that which is applicable in a forum non conveniens issue.[12] L. D. Reeder Contractors v. Higgins Industries, Inc., 265 F2d 768 (footnote 12); Kourkene v. American BBR, Inc., 313 F2d 769; Tyee Construction Co. v. Dulien Steel Products, Inc., 62 Wash. 2d 106 (381 P2d 245).

On this analysis it is deduced that in order to subject a nonresident defendant to the forum's jurisdiction, what must be considered is more than a mere determination that through purposeful actions the nonresident defendant has established a "minimum contact" with the forum and that a cause of action results therefrom. What is required is a "minimum contact" such that its use as the predicate for establishing in personam jurisdiction does not offend "traditional notions of fair play and substantial justice." Several factors enter into this test for "reasonableness" but since the International Shoe test will vary with the quality and nature of the defendant's activity with or in the forum, no inclusive catalog of "reasonable" factors is possible. We find however the list compiled by the Supreme Court of North Carolina in Byham v. National Cibo House Corp., 265 N. C. 50 (143 SE2d 225) to be illustrative of relevant factors. In the greater number of cases an affirmative answer to the first two "rules" will perhaps obviate an extensive investigation of the factors relevant to the third; this is true because there usually will exist more "contacts" between the nonresident and the forum than the isolated activity which gives rise to the resident plaintiff's cause of action. For example, it is "reasonable" to subject a nonresident to suit in Georgia if, due to some purposeful

[11]International Shoe Co. v. Washington, 326 U. S. 310, 316, supra.

[12]See, Note, 47 Georgetown L. J. 342, 355.

activity here, he causes a tortious injury to a resident and if *in addition* he "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenues from goods used or consumed or services rendered in this State." Code Ann. § 24-113.1 (c). It is thus perceived that due process, which is the only limitation on jurisdiction, requires less connection between the nonresident and the forum than under the old legal "fictions" and if jurisdiction would be valid under a stricter test it will unquestionably be valid under the less stringent and more flexible mandate of International Shoe.[13] It is rather in those cases wherein the sole "contact" between the nonresident and the forum is the activity giving rise to the resident plaintiff's cause of action (and in those in which the nonresident's activities with or in the forum exceed a single transaction but do not rise to the level of the legal "fiction" standards) that the question of "reasonableness" in the exercise of jurisdiction takes on true independent significance.

 2. *Code Ann. § 24-113.1 (b) and Its Application.*

 Jurisdiction here is predicated upon Code Ann. § 24-113.1, which provides in its relevant part: "A court of this State may exercise personal jurisdiction over any nonresident, . . . as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he: (b) Commits a tortious act or omission within this State;. . ."

 Subsection (b) was first interpreted by this court as encompassing the so-called New York rule, requiring both the tortious act or omission and the resultant injury to have occurred in Georgia in order for jurisdiction to attach. *O'Neal Steel, Inc. v. Smith,* 120 Ga. App. 106 (169 SE2d 827) remanded on other grounds, 225 Ga. 778 (171 SE2d 519), vacated 121 Ga. App. 8 (172 SE2d 479). In

---

[13]For the proposition that Code Ann. § 24-113.1 (c) has been "swallowed up" by the Supreme Court's interpretation of Code Ann. § 24-113.1 (b) see Comment, 10 Ga. S. B. J. 164, 174.

*Castleberry v. Gold Agency, Inc.,* 124 Ga. App. 694 (185 SE2d 557) the *Smith* decision, though vacated, was followed and the New York rule again adopted. This interpretation was reaffirmed in *Coe & Payne Co. v. Wood-Mosaic Corp.,* 125 Ga. App. 845 (189 SE2d 459); on certiorari to the Supreme Court however this court was reversed and Code Ann. § 24-113.1 (b) was held applicable to causes of action arising from an injury in Georgia resulting from a tortious act or omission occurring outside this state. *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58 (195 SE2d 399). In so doing our Supreme Court has significantly broadened the scope of Code Ann. § 24-113.1 (b) and has indicated that jurisdiction over nonresidents who commit a "tortious act" in Georgia shall be extended to the maximum limits permitted by due process.

Extrapolating from the Supreme Court's decision in *Coe & Payne* and the due process analysis in Division 1 of this opinion, jurisdiction over a nonresident defendant may be exercised by virtue of Code Ann. § 24-113.1 (b) when: (1) The nonresident has purposefully done some act or consummated some transaction with or in the forum (but the actual act or omission resulting in the injury here need not have occurred in this state). The defendant need not be physically within the forum when this act or transaction occurs and a single such instance may suffice; (2) The Georgia plaintiff must have a legal cause of action in tort against the nonresident, which arises out of, or results from, the purposeful activity of the defendant involving this state; a resident is a victim of a "tortious act" when he suffers an injury here due to an act or omission of negligence occurring outside this state; and (3) If the requirements of (1) and (2) are satisfied, the exercise of jurisdiction over the nonresident must be "reasonable." We turn now to an application of this test to the appeal sub judice.

A. *Purposeful Activity.* The appellees urge an interpretation of our long arm statute such that an allegation of facts falling within the literal language of that statute, to wit, the "transaction of any business within this State" or the "commission of a tortious act or omission within this State," ipso facto satisfies the due process requirement of "contact" between the nonresident

defendant and the forum. In Hanson v. Denckla, 357 U. S. 235, supra, the extraterritorial power of a forum over nonresidents was limited to defendants who have purposefully availed themselves of conducting some activity within the state; that a resident plaintiff has taken some unilateral action in the forum which may in some manner relate to or connect with a nonresident who has not engaged in such activity is insignificant for jurisdictional purposes. The exercise of jurisdiction over a nonresident is an exercise of power over him *by the forum,* and we take the language of Hanson to mean that a nonresident must have some "contact" with the forum itself and not just a connection with a resident plaintiff. When a nonresident engages in some activity with or in the forum, even a significant single transaction, whether he be physically present there or not, and as a result business is transacted or a tortious injury occurs, a jurisdictional "contact" exists between that nonresident and the forum. But when the unilateral actions of a forum plaintiff merely involve or somehow relate to a nonresident who has in no way conducted some activity with or in the state, there may be a "connection" between the nonresident and the plaintiff but there is no "contact" between the nonresident and the forum such that jurisdiction will lie.

The appellees' argued-for interpretation of Code Ann. § 24-113.1 would be valid insofar as subsection (a) of that statute is concerned. For a showing that a nonresident has "transacted business *within* this state" with a plaintiff carries with it an implicit showing that the defendant has conducted some purposeful activity with or in this forum. That a nonresident has "transacted any business" within this forum shows *both* a "connection" between that defendant and the forum itself. Where however, a nonresident has not done some act or consummated some transaction here, he has not "transacted any business" within this state even though there may be some "connection" between the forum plaintiff and the nonresident defendant. *O. N. Jonas Co. v. B & P Sales,* 232 Ga. 256 (206 SE2d 437). Thus it is seen that a showing that a nonresident defendant has "transacted any business" in Georgia, as that phrase is

.

interpreted by the courts (and that a cause of action arises therefrom), ipso facto satisfied the "minimum" contact requirement; thereafter only the "reasonableness" question remains. The very language of subsection (a) itself presupposes and requires some activity by the nonresident with or in the forum; transaction of business is purposeful activity.

Appellees' interpretation of Code Ann. § 24-113.1 as it relates to subsection (b) of that law (and the applicable subsection here), that an allegation of tortious injury occurring inside Georgia due to a nonresident's act or omission outside this state establishes a sufficient predicate for the exercise of jurisdiction, would also be valid in the vast majority of cases because in this demonstrable "connection" between the plaintiff and the nonresident defendant will be either an explicit or implicit "contact" between the forum itself and the nonresident, i.e., activity within this state such as a shipment of defective goods into the stream of Georgia commerce which results in a tortious injury here. See *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58, supra. Unlike the "transaction of any business" however, a mere demonstration that an injury has occurred here due to an act or omission by a nonresident outside this forum does not necessarily show that the defendant had such "contact" with Georgia to confer jurisdiction over him, i.e., that he has *purposefully* availed himself of the privilege of conducting some activity here rather than being merely involved in a "connection" with a forum plaintiff due to that resident's unilateral actions within the state. A demonstration that a Georgia plaintiff suffers injury here due to a nonresident's out-of-state act or omission does not show, without more, that that nonresident has a "contact" with the forum. Unlike "transacting any business with this State" we believe that a nonresident may cause an injury in Georgia without ever having engaged in any purposeful activity here. See *Shearouse v. Paul Miller Ford Co.,* 127 Ga. App. 639 (194 SE2d 585). It is true that the Supreme Court in *Coe & Payne,* supra, held that subsection (b) "confers jurisdiction in the situation where the negligence occurred outside the State of Georgia" and quoted from an Illinois case to the effect

that the exercise of in personam jurisdiction is mostly a question of procedural due process. We note however that this Illinois case, Nelson v. Miller, 11 Ill. 2d 378 (143 NE2d 673), was decided before the Supreme Court warned in Hanson that restrictions on the exercise of in personam jurisdiction are more than a mere guaranty of immunity from inconvenient litigation. We believe that *Coe & Payne* is merely an interpretation of "tortious act or omission" and that its holding is reconcilable with Hanson; *Coe & Payne* does not eliminate the requirement of a "contact" between the nonresident and the forum but rather defines when a "tortious act or omission" has occurred in Georgia, i.e., when the injury is inflicted here, no matter where the negligent act or omission transpired. Thus under *Coe & Payne* and Hanson we perceive Code Ann. § 24-113.1 (b) to confer jurisdiction over a nonresident who conducts some activity in or with this state (such as manufacture for distribution of defective goods or shipment of those goods into Georgia) and as a result of that activity a Georgia resident suffers injury here (as through contact with defectively manufactured goods shipped into this state) even though the actual act or omission (defective manufacture) occurred outside this forum. To hold that a nonresident who has conducted no activity in or with Georgia is subject to our jurisdiction would eliminate the requirement for a "minimum contact" between that defendant and this forum; there would be no due process limitation on this state's extraterritorial power over nonresidents. We therefore hold that the mere allegation that as a result of an act or omission by a nonresident outside this state an injury has occurred to a Georgia plaintiff does not establish a "contact" with this forum in the absence of an implicit or explicit showing of activity with or in Georgia by the nonresident.

On this analysis it was error to deny the motions to dismiss of the individual appellants Shellenberger, Modesto and Power. The only "contact" between them and Georgia was through the appellees' unilateral action in buying in this state an aircraft which was previously owned or repaired by them at all times outside this state and which subsequently (and due to no responsibility on

their part) was sold to a Georgia corporation and ultimately was bought here by the appellees. This may establish some "connection" between the Georgia plaintiffs and the nonresident individual appellants but we do not believe prior ownership or repair of an airplane which fortuitously (insofar as these appellants are concerned) finds its way into Georgia commerce for resale to a resident plaintiff is a "contact" with this state when these nonresidents have never entered this forum, solicited the sale here (in person or by mail) or sold it to the Georgia plaintiff.

Appellant Rebel Aviation, Inc. stands on a different footing however. The record shows that it sold the aircraft to a Georgia corporation, which in turn sold it to the appellees; by so doing it placed an allegedly defective aircraft into the stream of Georgia commerce where it was foreseeable that it would be resold to a resident of this state. We believe this activity, selling to a Georgia resident for resale here, is a sufficient activity with or in this forum, purposefully taken, to establish a "contact" between Rebel Aviation and Georgia. In *Coe & Payne,* 230 Ga. 58, supra, jurisdiction was sustained under Code Ann. § 24-113.1 (b) over a foreign manufacturer who sold defective goods to a foreign distributor who sold the goods to a Georgia corporation who sold the goods to a Georgia individual. Here Rebel Aviation, Inc. introduced an aircraft directly into Georgia by selling it to a domestic corporation; upon this "contact" we believe a Georgia plaintiff may sue in this state for legally recognized injuries sustained due to acts or omissions taken with respect to the allegedly defective aircraft in Oklahoma.

In holding that Code Ann. § 24-113.1 (b) requires some activity by a nonresident defendant in or with Georgia, we wish to caution that there is no engrafting on this "tort" section the requirement that this activity amount to a "transaction of business" within this state. Activity which will support a finding of a "contact" with Georgia for purposes of exercising jurisdiction under subsection (b) need not be so extensive as to meet the definitional requirements of subsection (a). In *Coe & Payne Co. v. Wood-Mosaic Corp.,* 125 Ga. App. 851, supra, this court found the nonresidents had not "transacted any

business" in Georgia; the Supreme Court apparently agreed but still found the activity (manufacture and shipment of goods into Georgia) to be a sufficient "contact" upon which to predicate subsection (b) "tort" jurisdiction. Here although Rebel Aviation's activity with Georgia (sale of an airplane to a Georgia corporation in Oklahoma for resale in this state) would not support a showing of "transaction of any business," (see *O. N. Jonas Co. v. B & P Sales,* 232 Ga. 256, supra), we believe it is a sufficient "contact" with this forum to activate Code Ann. § 24-113.1 (b) and to satisfy the Hanson requirement of conducting purposefully activity with or in this state. In short, we conclude that Rebel Aviation has sufficient causal responsibility for the presence of the aircraft in this state to permit us to conclude that it has, by its own volition, subjected itself to answering in Georgia for injuries caused here by acts or omissions taken with regard to the plane in Oklahoma; the individual appellants do not share this responsibility. See, Leflar, The Converging Limits of State Jurisdiction Powers, 9 Journal of Public Law 282; Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251 (413 P2d 732).

B. *Legal Cause of Action.* It is alleged that Rebel Aviation's acts or omissions in the following respects constitute negligence per se, being violations of Federal Aviation Regulations: performing or having performed repairs to the aircraft; failing to keep and transfer a properly kept log book of maintenance records on the airplane; and, in performing annual or other major inspections on the plane.

Rebel Aviation is a prior owner of the aircraft. As such it was primarily responsible for maintaining the plane in an airworthy condition. 14 CFR, § 91.163 (a). To this end an owner is required to have the plane inspected every twelve months for airworthiness (every 100 hours of service time if the aircraft is operated for hire) and every twenty-four months for altimeter system tests; in addition all defects affecting airworthiness are required to be repaired between inspections. 14 CFR, §§ 91.165, 91.169 (a) and (b) and 91.170. Likewise, 14 CFR, § 91.173 mandates a proper keeping of maintenance records on the aircraft. We believe that the allegations of appellees'

complaint are sufficient "notice pleading" to state a cause of action in tort for the negligent breach of the owner's duty to have inspected, repaired and to keep proper records. See *Dillingham v. Doctors Clinic, P. A.,* 236 Ga. 302 (223 SE2d 625).

We have serious reservations however with the allegation that failure to transfer the records was a tortious breach of duty. 14 CFR, § 91.174 requires such records be transferred to the buyer from the seller of the aircraft. Here Rebel Aviation and the appellees do not stand in a buyer-seller relation and any tort which results from the breach of a duty which arises solely from a sales contract to which the appellees are not in privity cannot be sued upon by them. Code § 105-106.

As to the allegation that Rebel Aviation concealed a material fact concerning the condition of the aircraft and thus committed a tortious deceit, there was no solicitation by Rebel Aviation of the sale to the appellees and no negotiations between them prior to or subsequent to appellees' purchase. If there is a concealed defect, known to a seller, in property being sold, the seller is bound to reveal it to the purchaser. *Southern v. Floyd,* 89 Ga. App. 602 (80 SE2d 490). But where the defendant did not sell the goods to the plaintiff, or have any dealings at all with the plaintiff, we do not believe that any concealment, if in fact there was such, could be made with the intention and purpose of deceiving that plaintiff (*Gem City Motors v. Minton,* 109 Ga. App. 842 (1a) (137 SE2d 522)), or serve as an inducement for the plaintiff to purchase the aircraft (*Jackson v. Smith,* 94 Ga. App. 697 (96 SE2d 193)).

In summary, we hold that appellees' complaint alleges a legal cause of action in tort against appellant Rebel Aviation for negligence in repairing, inspecting and keeping proper records on the aircraft but fails on the allegation of negligence in failing to transfer records and of fraudulent deceit in concealing a material fact.

C. *"Reasonableness."* We have carefully weighed the factors present in this appeal against those found in the Byham case, 265 N. C. 50, supra, and conclude that an in personam exercise of jurisdiction based upon its activity with or in this state resulting in an injury to a Georgia plaintiff is "reasonable." (1) Georgia has a

legitimate interest in protecting its residents from dangerous or defective goods introduced into this forum. *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, supra; (2) The courts of Georgia would be open to Rebel Aviation to enforce the obligation of the resident-buyer of its aircraft; (3) While it may be inconvenient to the appellant to stand trial away from Oklahoma, we believe this is outweighed by the inconvenience to a Georgia resident who would be forced to sue in a foreign forum on a cause of action allegedly arising from that nonresident's introduction of defective or negligently maintained goods into our stream of commerce. *J. C. Penney Co. v. Malouf Co.*, 230 Ga. 140 (196 SE2d 145); and (4) Our legislature has given the courts of this state through enactment of our long arm statute the authority to entertain litigation against nonresidents who commit a tortious injury in this state. We find, on the balance, it to be "reasonable" to subject Rebel Aviation to Georgia's personam jurisdiction, even though its sole "contact" with Georgia is this single activity of introducing a plane into the stream of Georgia's commerce.

*Judgments in 51911, 51912 and 51915 reversed; judgment in 51914 affirmed. Quillian, J., concurs. Webb, J., concurs in the judgments only.*