John P. MANTON, Plaintiff,

v.

CALIFORNIA SPORTS, INC., d/b/a Los Angeles Lakers, Defendant.

Civ. A. No. C 79–2103A.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 30, 1980.

William H. Major and William B. Brown, Heyman & Sizemore, Atlanta, Ga., for plaintiff.

S. Phillip Heiner and Charles Cooper, Long, Aldridge, Heiner, Stevens & Sumner, Atlanta, Ga., for defendant.

## ORDER

SHOOB, District Judge.

This case is before the Court on defendant's motion to dismiss for lack of personal jurisdiction over defendant California Sports, Inc., d/b/a the Los Angeles Lakers. Defendant has also moved the Court to quash service of process on defendant as insufficient and improper.

## FACTS

Plaintiff John P. Manton is an attorney and resident of Georgia who is in the business of acting as agent for professional athletes. Complaint, page 1, ¶ 1.

Defendant California Sports, Inc., d/b/a Los Angeles Lakers, is a corporation organized and existing under the laws of the State of California, with its principal place of business in Inglewood, California. Defendant has no place of business, office, real or personal property, bank accounts, post office boxes or telephone listings in the State of Georgia. Defendant has no employees or agents in the State of Georgia. Defendant owns and operates the Los Angeles Lakers ("Lakers") professional basketball team, which is one of twenty-two teams in the National Basketball Association ("NBA"). The Lakers occasionally play basketball games in Georgia. During the 1978–79 season, the Lakers played two games in Georgia; during the 1979–80 sea-

son, the Lakers played one game in Georgia. Affidavit of Joan McLaughlin, Director of Personnel/Payroll for defendant, pages 1–2.

Defendant receives no share of the gate receipts from the games the Lakers play in Georgia. However, defendant does receive some revenue from Georgia by way of defendant's broadcast of games played in Georgia back to the Los Angeles area. Baumeister Deposition, page 13. Defendant also derives indirect benefit from games played in Georgia. Each NBA team, including the Lakers, received about $800,000 this past season as its share of the amount paid by the television networks to the NBA for the broadcast of NBA games; some of the televised games were played in Georgia. Baumeister Deposition, page 16. And while the Lakers received no share of the gate receipts from games the Lakers played in Georgia, the Lakers were, on the other hand, entitled to 100% of the gate receipts when the Georgia NBA member, the Atlanta Hawks basketball team, played at Los Angeles. Constitution and By-Laws of the NBA, Exhibit 3 to Baumeister Deposition. In addition to these economic benefits derived from Georgia, defendant incurs considerable expenses in Georgia each time the Lakers' twenty-person travelling group makes a trip to Georgia for a Lakers game.[1] Exhibit 2 to the Baumeister Deposition.

Defendant also owns and operates a team in the National Hockey League, the Los Angeles Kings. The contacts that the Los Angeles Kings had with Georgia through the end of the 1979–80 season [2] were roughly similar to the Lakers' contacts with Georgia. Lacher Deposition, page 41.

Defendant has never been licensed or qualified to do business in the State of Georgia. Baumeister Affidavit, page 2; Lacher Affidavit, page 2.

Earvin "Magic" Johnson ("Magic") is a professional basketball player for the Los Angeles Lakers. During his final year in college, Magic led his team to the NCAA Basketball Championship. In his first year as a professional basketball player, 1979–80, Magic was a member of the starting team for the Los Angeles Lakers, was runner-up in the Rookie-of-the-Year competition, and was named the Most Valuable Player in the NBA Championship Series, which the Lakers won.

Plaintiff claims that on April 25, 1979, he entered into a contract with Magic (who was at that time still in college). Under the terms of the contract, plaintiff was to negotiate a contract on Magic's behalf with the NBA team that chose Magic in the NBA player draft. Plaintiff was to receive 2½% of the total contract amount negotiated, plus 10% of all money Magic would earn in product endorsements. Complaint, pages 1–2, ¶¶ 4–5. Defendant had the right to make the first selection in the 1979 player draft; it was expected that Magic would be the first player selected. Complaint, page 2, ¶¶ 5, 7.

Plaintiff claims that prior to the draft, he contacted defendant's president, Mr. Jack Cooke, to negotiate a contract for Magic's services. Plaintiff alleges that defendant, in order to get Magic to sign for less money, induced Magic to breach his contract with plaintiff, Complaint, pages 2–3, ¶¶ 9, 11–13, and that defendant then negotiated an employment contract for Magic's services directly with Magic, for an amount considerably less than plaintiff would have gotten for Magic.

The contract between defendant and Magic was executed in New York, New York and all payments under the contract are made in California. Buss Affidavit, page 1. All negotiations between Magic and defendant took place in California; none occurred in Georgia. No employee or agent of defendant ever entered Georgia in connection with any matters relating to

---

**1.** During the 1977–78 season, the Lakers spent $2,240 for hotel and transportation expenses in Georgia. During the 1978–79 season, the Lakers spent $1,519 in Georgia for the same items. Exhibit 2 to the Baumeister Deposition.

**2.** The Georgia team in the National Hockey League, the Atlanta Flames hockey team, has since moved to Canada; thus no future visits by the Los Angeles Kings to Georgia are anticipated at this time.

Magic's contract with defendant or plaintiff's alleged contract with Magic. Lacher Affidavit, pages 1–2.

On October 9, 1979, plaintiff filed this suit against defendant in the Superior Court of Fulton County, Georgia. Plaintiff seeks actual damages in an amount to be ascertained by the jury, punitive damages for defendant's malice in the amount of $1,000,000, and expenses and attorney's fees due to defendant's bad faith. Complaint, page 4. Service was made on defendant in the manner set forth in Ga. Code Ann. § 22–1410(b). Amendment to Plaintiff's Complaint; see also Affidavit of William B. Brown.

On November 14, 1979, defendant caused the action to be removed to this Court pursuant to 28 U.S.C. §§ 1441(a) and (b). The basis for the subject matter jurisdiction of this Court is diversity. Plaintiff is a Georgia resident, defendant is a California corporation and the amount in controversy, exclusive of interest and costs, exceeds $10,000. 28 U.S.C. § 1332. Appearing specially only, defendant on the same day as removal filed this motion to dismiss and to quash service of process.

### DISCUSSION

Plaintiff's cause of action sounds in tort and thus, personal jurisdiction over defendant can be secured under Ga. Code Ann. § 24–113.1(a), (b) or (c).[3] "In deciding whether the state jurisdictional statute confers jurisdiction over a non-resident defendant in a diversity suit, it must be determined that (1) the defendant is in fact amenable to service under the statute (state law of the forum controls this question), and (2) if the state statute has been complied with, then federal law must be applied to determine whether assertion of jurisdiction over the defendant comports with due

process." *Walker v. Newgent*, 583 F.2d 163, 166 (5th Cir. 1978).

In order for subsection (a) to apply, jurisdiction over a non-resident must exist "on the basis of transacting business in this state if the non resident has purposefully done some act or consummated some transaction in this state, if the cause of action arises from or is connected with such act or transaction, and if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *Davis Metals, Inc. v. Allen*, 230 Ga. 623, 625, 198 S.E.2d 285, 287 (1973). *See also* Ga. Code Ann. § 24–113.1. Defendant's contact with Georgia, through the Los Angeles Lakers, may fairly be characterized as purposeful, very infrequent, and moderate in extent. However, plaintiff's cause of action did not arise or result from, nor was it connected with (except in the most general sense that defendant owns and operates a basketball team for profit) defendant's purposeful forum contact. Thus, subsection (a) would not be applicable.

Neither would subsection (c) be available to plaintiff. Defendant did not regularly engage in business in this state nor did it derive a substantial revenue from services in the state. Further, it appears to this Court that the exercise of jurisdiction would offend traditional notions of fairness and substantial justice. To hold otherwise would subject professional sports to actions in any state where they participate, no matter how infrequently, based on an alleged tort committed elsewhere.

Finally, subsection (b) is inapplicable for a reason common to both (a) and (c), that is, the cause of action is not related to defendant's forum activities. No Georgia cases have been found in which the 'arising from' requirement has been dispensed with.

---

**3.** *Scott v. Crescent Tool Co.*, 296 F.Supp. 147 (N.D.Ga.1968), holding that subsection (a) is limited to contract actions, is no longer viable in view of subsequent decisions. *See Atlanta Coliseum, Inc. v. Carling Brewery Co.*, 411 F.Supp. 253 (N.D.Ga.1976). While to decide that subsection (b) of the long arm statute would confer jurisdiction where the tort occurred outside the state nullifies the legislative intent expressed in subsection (c), which deals with tortious acts or omissions outside the state and imposes certain conditions on its use, the Supreme Court of Georgia adheres to that view. *See Coe & Payne Company v. Wood-Mosaic Corp.*, 230 Ga. 58, 195 S.E.2d 399 (1973); *Clarkson Power Flow, Inc. v. Thompson*, 244 Ga. 300, 260 S.E.2d 9 (1979).

In *Shellenberger v. Tanner*, 138 Ga.App. 399, 227 S.E.2d 266 (1976), the Georgia Court of Appeals restated that language of the long arm statute as being an element of the *International Shoe [Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95] 'minimum contacts' requirement. To be subject to the long arm jurisdiction of a state, the nonresident must "purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum. . . . (2) The plaintiff must have some legal cause of action against the nonresident, which *arises out of, or results from*, the activity or activities of the defendant within the forum; and (3) *If (and only if) the requirements of Rules 1 and 2 are established, a 'minimum contact' between the nonresident and the forum exists*; the assumption of jurisdiction must be found to be consonant with the due process notions of 'fair play' and 'substantial justice,'" *Shellenberger, supra*, 138 Ga.App. at 404–05, 227 S.E.2d at 272 (emphasis added) (citations omitted). The view of the Georgia courts on the reach of the Georgia long arm statute is controlling in this situation. *Edwards v. Associated Press*, 512 F.2d 258, 261 (5th Cir. 1975).

Thus, for the reasons set forth above, the Court lacks personal jurisdiction over defendant; the case must be DISMISSED.