**LYONS MANUFACTURING CO., INC. and Wilbur Gross, Plaintiffs,**

v.

**Sidney GROSS, Defendant.**

**Civ. A. No. CV681–28.**

United States District Court, S. D. Georgia, Swainsboro Division.

Aug. 6, 1981.

W. Ward Newton, Lyons, Ga., for plaintiffs.

Susan A. Cahoon, Kilpatrick & Cody, Atlanta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

█ In this action, originally brought in Toombs County Superior Court, plaintiffs, in a three-count complaint, allege that defendant breached an employment agreement and shareholders agreement between plaintiffs and defendant and that said breach rendered a guaranty, executed by plaintiff Gross, null and unenforceable. Plaintiffs seek damages and declaratory relief. Defendant moved to dismiss the action for want of personal jurisdiction and thereafter petitioned for removal to this Court. In resolving the issues raised by the motion to dismiss, the Court may consider pertinent affidavits and exhibits on file. See Edwards v. Associated Press, 512 F.2d 258, 262 n.8 (5th Cir. 1975). A review of these materials reveals the following facts.

Lyons is a Georgia corporation which, since its formation, has been located in Toombs County, Georgia. At one time, prior to March 31, 1970, defendant Sidney Gross was the majority stockholder in Lyons as well as an officer of the corporation. As the result of a heart attack in 1966, however, defendant significantly reduced his business activities and, between 1966 and March 31, 1970, made only one or two trips to Georgia to monitor the business operations of Lyons. During this period, defendant's brother, plaintiff Wilbur Gross, began to assume primary responsibility for actively monitoring the affairs of Lyons.

On March 31, 1970, defendant and plaintiff Gross entered into a shareholders agreement whereby defendant transferred his stock ownership in Lyons to his brother in exchange for, inter alia, an employment contract with the company. The parties signed the employment contract on the same date. Both agreements were negotiated and executed in the State of New York and both brothers were residents of New York at the time of the transaction. The shareholders agreement directed that New York law would govern the construction of the contract. At no time did defendant enter the State of Georgia in connection with the negotiation or execution of these agreements.

The employment agreement provided in part that defendant was to serve as sales manager and general consultant for Lyons in the City of New York. As compensation, defendant was to receive a weekly salary in the amount of $300.00 and an expense payment in the amount of $90.00 per month. The agreement also provided that defendant would receive "10% of any bonus paid to the officers and department heads of the corporation" and that, in the event Lyons sold or disposed of substantially all its assets, defendant would receive a certain payment. It appears that defendant had never been requested to perform any services under the employment agreement until October, 1980. At that time, plaintiff Gross (now president and majority stockholder in Lyons) asked defendant to attempt to sell some shirts in New York City.

In addition to the employment contract as consideration for the transfer of stock by defendant, the shareholders agreement placed several restrictions on the operations of Lyons and afforded defendant a continuing opportunity to monitor the affairs of the corporation. For example, the agreement delimited stockholder control over stock, and corporation control over assets, and further provided that defendant shall be furnished with the corporation's annual statement and shall have access to the books of the corporation. These provisions were to terminate upon the conclusion of defendant's employment contract with Lyons.

Approximately two years after these agreements were entered into, plaintiff Gross executed a guaranty on January 14, 1972, in which he (1) guaranteed the full performance of the employment contract with defendant and (2) guaranteed the payment of premiums on a life insurance policy

with himself as the insured and defendant as irrevocable beneficiary. The guaranty was executed in the City and State of New York.

At the present time defendant is 66 years-old and is semi-retired; he is employed on an occasional basis as a salesman for a corporation located in New York City. None of defendant's work with this corporation requires that he travel into the State of Georgia or maintain business contacts in the state. Defendant has never been a resident of the State of Georgia and, since March 31, 1970, has only made one trip to Georgia for the purpose of attending his nephew's graduation. During that single visit, defendant did not visit the facilities of Lyons nor engage in any business for Lyons.

It is undisputed that defendant is a "nonresident" for jurisdictional purposes. *See* Ga.Code Ann. § 24–117 (1981). Thus, in deciding the personal jurisdiction issue raised by defendant in this diversity case, reference must be had to the Georgia long-arm statute and to the state appellate decisions interpreting the statute. *See Gold Kist, Inc. v. Baskin-Robbins Ice Cream*, 623 F.2d 375, 377 (5th Cir. 1980); *Attwell v. LaSalle National Bank*, 607 F.2d 1157 (5th Cir. 1979). The Georgia long-arm statute provides:

A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

(a) Transacts any business within this State; or

(b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

(c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; or

(d) Owns, uses or possesses any real property situated within this State.

Ga.Code Ann. § 24–113.1 (1971). Georgia appellate courts construing this statute are mindful "that the Long Arm Statute contemplates that jurisdiction shall be exercised over nonresident parties to the maximum extent permitted by procedural due process." *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 60, 195 S.E.2d 399 (1974).

Defendant argues that the exercise of extraterritorial *in personam* jurisdiction in this action, if any, must be found under subsection (a), and that, upon examination of the pertinent facts, it is apparent that defendant has not "transacted any business" within the State of Georgia. Construing subsection (a), the Georgia Supreme Court set forth a three-part test for determining whether a nonresident defendant has transacted any business within the state:

Under [section 24–113.1(a)] jurisdiction over a nonresident exists on the basis of transaction business in this state if the nonresident has purposefully done some act or consummated some transaction in this state, if the cause of action arises from or is connected with such act or transaction, and if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Davis Metals, Inc. v. Allen*, 230 Ga. 623, 625, 198 S.E.2d 285 (1973). Thus, the pertinent inquiry in this case is whether defendant has purposefully done some act or consummated some transaction in the State of Georgia which in some way is connected with plaintiff's present cause of action.

The facts, as earlier recited, show that defendant has never resided in the State of Georgia and that, at the time the employment agreement and shareholders agreement were executed, both defendant and plaintiff Gross were residents of New York. The contracts were negotiated and executed

in New York, and the shareholders agreement directed that New York law would apply in matters of contract construction. Defendant never performed any services under the employment contract in Georgia nor entered Georgia in connection with either agreement. Indeed, by the terms of the employment agreement, defendant's services were to be performed in New York. Since March 31, 1970, defendant has entered the State of Georgia on only one occasion and that was for a matter completely unrelated to the Lyons business.

On these facts, the Court finds that the requirements of section 24-113.-1(a), as prescribed by the *Davis Metals* court, are not met. Of course, if the contracts had been negotiated in Georgia, *see Delta Equities v. Larwin Mortgage Investors*, 133 Ga.App. 382, 211 S.E.2d 9 (1974), or had been executed in Georgia with both parties physically present, *see Davis Metals*, 230 Ga. at 625, 198 S.E.2d 285, then as indicated by Georgia appellate decisions, jurisdiction over the nonresident defendant would be proper. Additionally, the Court would have acquired personal jurisdiction over defendant if he had performed some service under the employment contract in Georgia. *See id. Cf. Storey v. Seffelaar & Looyen, Inc.*, 142 Ga.App. 873, 237 S.E.2d 236 (1977); *Unistrut Georgia, Inc. v. Faulkner Plastics, Inc.*, 135 Ga.App. 305, 217 S.E.2d 611 (1975).

Clearly, however, no such jurisdiction-generating event occurred in the forum state. The State of New York was the situs of the contract negotiation and execution, and defendant's performance under the employment contract was to occur in New York. Moreover, the shareholder's agreement, an integral part of the transaction between the parties, provided that "[t]his contract shall be construed pursuant to the Laws of the State of New York." *Cf. Davis Metals*, 230 Ga. at 625, 198 S.E.2d 285 (finding *in personam* jurisdiction over nonresident defendant, because, in part, "[b]oth parties ... invoked the protection of the law of Georgia with respect to their individual rights and liabilities under the

contract."). Finally, since defendant's one trip to Georgia subsequent to March 31, 1970, was unrelated to plaintiffs' theory of relief in this case, that "contact" may not serve as the basis for the exercise of extraterritorial jurisdiction. *See Fowler Products Co. v. Coca-Cola Bottling Co.*, 413 F.Supp. 1339, 1340 (M.D.Ga.1976).

While the foregoing discussion shows that defendant's post-March 31, 1970, connections with the State of Georgia are minimal at best, and do not amount to the requisite "minimum contacts," plaintiffs offer several alternative arguments in support of jurisdiction. Initially, plaintiffs argue that the transaction between the brothers Gross on March 31, 1970, left Sidney Gross with substantial involvement in the affairs of the Lyons business. As a result, plaintiffs contend, "defendant ... placed himself hip-deep in the operations and activities of Lyons Manufacturing Company, and, in so doing, introduced himself and his interests into this forum and availed himself of the protection of its laws." *Plaintiffs' Response to Defendant's Motion to Dismiss at 4*.

A review of the shareholders agreement, however, shows that, at most, defendant maintained a passive involvement in the affairs of Lyons. Certainly, with the transfer of defendant's stock, he relinquished any capacity for direct involvement in the Lyons business. Furthermore, although the agreement curtails the business activities of the resident plaintiff and imposes some obligations, such contractual consequences of an out-of-state agreement on a resident party do not amount to the "transaction of business" by the nonresident party. *See Fowler Products Co. v. Coca-Cola Bottling Co.*, 413 F.Supp. at 1342. ("[A] decision that the court has jurisdiction over this nonresident on account of its contract with the plaintiff would amount to an authorization of nationwide service of process."). The Court is unable to conclude that the negotiation and execution of agreements outside the forum state, which affect a domestic corporation under the laws of the forum and which delimit a resident

party's control over that corporation, would, without more, confer *in personam* jurisdiction over a nonresident party to the agreements.

Plaintiffs also maintain that the transfer of a controlling interest in Lyons, a Georgia corporation, by defendant constituted a "transaction of business" within the purview of section 24–113.1(a). In support of this proposition, defendant cites two Georgia appellate decisions which held that "*in personam* jurisdiction could be exercised pursuant to section 24–113.1(d) when the cause of action arose from the defendant's sale of defendant's Georgia realty." *Hart v. DeLowe Partners, Ltd.*, 147 Ga.App. 715, 716, 250 S.E.2d 169 (1978) (citing *Cox v. Long*, 143 Ga.App. 182, 237 S.E.2d 672 (1977)). Apparently, plaintiffs seek to analogize, for jurisdictional purposes, the sale of real property to the transfer of corporate stock.

■ Upon review of the cited authority, this Court is unwilling to adopt plaintiffs' suggested analogy. To begin with, as stated by Judge Shulman in *Cox*, "Georgia has a manifest interest in providing redress in a controversy concerning the sale of real property situated in this state." 143 Ga.App. at 183–84, 237 S.E.2d 672. The forum state does not share such an obvious "manifest interest" with respect to personal property. Furthermore, even assuming the applicability of subsection (d) to the transfer of personalty, such a transfer must have some connection with the forum state beyond the mere fact of ownership in the state. *See Hart*, 147 Ga.App. at 717, 250 S.E.2d 169 ("Jurisdiction must be predicated on the existence of ties among the defendants, this state, and the litigation so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."). In *Cox*, for example, "[t]he offer, preliminary negotiations relating to the realty, preparation of documents, closing, recording of deeds and payment of fees took place in Georgia." 143 Ga.App. at 182, 237 S.E.2d 672. In contrast, negotiation and execution of the shareholders agreement transferring stock in the present case occurred in New York.

As a third argument in support of jurisdiction, plaintiffs maintain that defendant's alleged wrongful receipt of expense reimbursements from Lyons in New York, which allegedly caused injury to Lyons in the State of Georgia, provides a basis for *in personam* jurisdiction under section 24–113.1(b). The Georgia Court of Appeals examined the "act without/injury within" jurisdictional rule, as judicially engrafted on subsection (b), in *Shellenberger v. Tanner*, 138 Ga.App. 399, 227 S.E.2d 266 (1976). There, Judge Deen formulated the following test for subsection (b) jurisdiction:

1. The nonresident must purposely avail himself of the privilege of doing some act or consummating some transaction with or in the forum.
2. The plaintiff must have a legal cause of action.
3. If the first two requirements are met, the exercise of jurisdiction over the nonresident must be reasonable.

*Swafford v. Avakian*, 581 F.2d 1224, 1226 (5th Cir. 1978) (construing *Shellenberger*, 138 Ga.App. at 407, 227 S.E.2d 266). Recently, the Georgia Supreme Court held "that limitations similar to those present in subsection (c) are constitutionally mandated under subsection (b)." *Clarkson Power Flow, Inc. v. Thompson*, 244 Ga. 300, 260 S.E.2d 9 (1979).

■ Assuming, for purposes of argument, that plaintiffs state a valid claim sounding in tort, the Court finds that the jurisdictional requirements set forth in *Shellenberger* are not satisfied. As stated earlier, the employment agreement was negotiated and signed in New York, and any performance under the contract by defendant occurred in New York. Upon review of the facts, the Court can discern no purposeful action by defendant in the State of Georgia which was connected with the employment agreement and was related to the alleged tortious injury to Lyons within Georgia. Accordingly, personal jurisdiction over defendant does not exist under section 24–113.1(b).

Finally, plaintiffs contend that the Court has *in rem* jurisdiction over defendant. The asserted property interest of defend-

ant, is a certain intangible contractual right to proceeds derived from the sale of Lyons in the State of Georgia.

 Initially, the Court notes that no judicial process, by attachment or otherwise, has been instituted against these proceeds to provide a basis for the Court's exercise of *in rem* jurisdiction. The Court further observes that "in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising 'jurisdiction over the interest of persons in a thing'." *Shaffer v. Heitner*, 433 U.S. 186, 207, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 (1977). Thus, the "minimum contacts" requirement for *in personam* jurisdiction applies to *in rem* jurisdiction as well. In this case, the assertion of jurisdiction over a nonresident defendant on the basis of his intangible contractual right, pursuant to an out-of-state agreement, to certain proceeds derived from the sale of a domestic corporation's assets by the resident party to the out-of-state contract, would not, without more, satisfy due process consideration or comport with "traditional notions of fair play and substantial justice."

Accordingly, based upon the foregoing findings, plaintiffs' complaint is dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of *in personam* jurisdiction over defendant.