## PSYCHOLOGICAL RESOURCES SUPPORT SYSTEMS, INC., Plaintiff,

### v.

## Maurice R. GERLEMAN, Psychological Systems, Inc., Defendants.

### Civ. A. No. C85–3541A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 31, 1985.

James B. Middleton, Decatur, Ga., for plaintiff.

Anne S. Infinger, Arnold, Golden & Gregory, Atlanta, Ga., Michael A. O'Neil, Herbert J. Hammond, Gardere & Wynne, David H. Judson, Dallas, Tex., for defendants.

### ORDER

MOYE, Chief Judge.

The plaintiff's suit, seeking monetary and injunctive relief for copyright infringement and for unfair competition is here on the defendants' motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3). The defendants are Maurice R. Gerleman, a citizen of Texas, and Psychological Systems, Inc. ("PSI"), which is incorporated in Delaware and has its principal place of business in Dallas, Texas. The plaintiff invokes the jurisdiction of this Court under 28 U.S.C.A. § 1330(a), (b) (West 1976).

### I. *Factual background*

In mid–1982, Mr. Gerleman met Dr. David G. Hubbard in Dallas, Texas. Dr. Hubbard at that time owned a company

named Personality Profiles, Inc., which was doing business in Dallas providing computerized psychological testing services. The testing services included the administration of a battery of standardized psychological tests and the processing of those tests by a computer software program to generate a clinical-language narrative.

This test battery was developed and used primarily in clinical applications. Mr. Gerleman determined that if a nonclinical language narrative could be generated from the test battery, then computerized psychological testing services could be successfully marketed to the business community at large. Mr. Gerleman incorporated PSI in July 1983 with the intention of offering computerized psychological testing services to the business community.

Mr. Gerleman learned that Dr. Herbert Eber, of the plaintiff, had done some development work on the computer software program used by Personality Profiles, Inc. to process the test battery. On August 12, 1983, Mr. Gerleman traveled to Atlanta, Georgia to meet Dr. Eber for the purpose of discussing his plans to provide computerized psychological testing services to the business community through PSI. Mr. Gerleman was accompanied on this visit by Ms. Joanne Borger, who assisted him in his negotiations there and who later incorporated PSI. The parties' versions of what went on at this meeting differ.

After returning to Dallas, Mr. Gerleman began negotiating with Dr. Hubbard for the acquisition of the assets of Personality Profiles, Inc. On August 24, 1983, Dr. Hubbard and Mr. Gerleman executed an "Agreement for Purchase and Sale of Assets" in Dallas under which PSI acquired certain assets and rights and also assumed certain obligations of Personality Profiles, Inc.

It is undisputed that PSI sent two checks to the plaintiff in 1983. The plaintiff characterizes these as "royalty" payments. It is further undisputed that PSI received certain other services from the plaintiff, which the plaintiff describes as characteristic of its services for other licensees of its copyrighted software program. Some time after PSI's acquisition of Personality Profiles, Inc., which had apparently leased the computer program in question, the plaintiff obtained a copyright registration on this software.

## II. *Personal jurisdiction*

### (a) *Waiver*

As a preliminary matter, the plaintiff argues that the defendants have, by failing to answer the complaint within twenty days of the date of service of the complaint, waived any objection to venue. This argument is meritless. The twenty-day period for serving an answer, and thus for serving a motion under Rule 12, begins on the date the acknowledgement of service is signed. *Madden v. Cleland*, 105 F.R.D. 520, 525 (N.D.Ga.1985). The acknowledgement of service in this action was executed on August 2, 1985, and the defendants' motion to dismiss was timely filed twenty days thereafter.

### (b) *The foreign tort*

This Court may exercise personal jurisdiction over a nonresident defendant to the extent permitted under the Georgia long-arm statute, O.C.G.A. § 9–10–91 (Supp. 1985). *Hayes v. Irwin*, 541 F.Supp. 397, 416–17 (N.D.Ga.1982), *aff'd*, 729 F.2d 1466 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984). In addition, the nonresident defendant must have established such minimum contacts with the forum that the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 300, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980). The plaintiff must allege the jurisdictional prerequisites. If these allegations are controverted, the "plaintiff has the burden of going forward with sufficient factual evidence to establish a *prima facie* showing of the jurisdictional allegations." *National Egg Co. v. Bank Leumi le-Israel B.M.*, 504 F.Supp. 305, 309 (N.D.Ga.1980).

The claims alleged sound in tort. *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir.1973) (copyright infringement); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3rd Cir.1978) (unfair competition). Subsection (1) of the Georgia long-arm statute applies only to claims based on contract and not those sounding in tort. *Lutz v. Chrysler Corp.*, 691 F.2d 996, 997 (11th Cir.1982) (relying on *Whitaker v. Krestmark of Alabama, Inc.*, 157 Ga.App. 536, 537–38, 278 S.E.2d 116 (1981)). When the claims sound in tort, jurisdiction must be premised upon subsections (2) or (3) of the long-arm statute, and the court seeking to exercise personal jurisdiction must satisfy three requirements:

> (1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum. It is not necessary that the defendant or his agent be physically within the forum, for an act or transaction by mail may suffice. A single event may be a sufficient basis if its effects within the forum are substantial enough to qualify under Rule 3; (2) The plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum; and (3) If (and only if) the requirements of Rules 1 and 2 are established, a 'minimum contact' between the nonresident and the forum exists; the assumption of jurisdiction must be found to be consonant with the due process notions of 'fair play' and 'substantial justice.' In other words, the exercise of jurisdiction based upon the 'minimum contact' must be 'reasonable.'

*Shellenberger v. Tanner*, 138 Ga.App. 399, 404–05, 227 S.E.2d 266 (1976).

The defendants neatly summarize the various "contacts" allegedly supporting the assertion of personal jurisdiction here: (1) Mr. Gerleman's visit to Atlanta for the "sole purpose of negotiating a license agreement" (plaintiff's response, filed September 4, 1985, at 10); (2) the license agreement allegedly entered into in Georgia (Eber Affidavit ¶ 16); (3) the defendants' payment of "royalty checks" to the plaintiff in Georgia (plaintiff's response, *supra*, at 11); (4) Ms. Borger's alleged solicitation of business on behalf of PSI from Fuqua Industries in Atlanta (Borger Affidavit ¶ 17); (5) the mailing of a card reader to Georgia for repair (plaintiff's response, *supra*, at 12); and (6) the alleged providing of supplies and continued technical assistance to PSI following its acquisition of Personality Profiles, Inc. (Morrow Affidavit ¶¶ 8–9).

It is apparent that the defendants had numerous contacts with the forum. It is undisputed that at one point Mr. Gerleman was physically present within the forum in his capacity as representative for PSI. Although the parties disagree on the purpose of Mr. Gerleman's visit, the Court holds that this and other contacts with the forum were sufficient to permit the exercise of jurisdiction over PSI.

Much of the defendants' argument in opposition to this holding rests on the imagined distinction between subsections (2) and (3) of the long-arm statute. The defendants' own authorities suggest that no substantial distinction exists between the two subsections. Because of a judicial gloss on the statute, a tort committed outside the state will suffice to confer jurisdiction under subsection (2), even though its language refers to a tort committed within the state.[1] *Shellenberger*, 138 Ga.App. at 409–10, 227 S.E.2d at 271. The requirements of subsection (3), i.e., that the tortfeasor who commits a "tortious injury in this state caused by an act or omission outside this state ... regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state

---

1. Subsection (2) reads: "A court of this state may exercise personal jurisdiction over any nonresident ... if in person or through an agent, he: ... (2) commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; ...." O.C.G.A. § 9–10–91 (Supp. 1985).

....", are obviously narrower than those of subsection (2), which imposes no such restrictions. O.C.G.A. § 9–10–91(3). The similarity between the two sections does not, as the defendants suppose, mean that the restrictions of subsection (3) are to be imposed on subsection (2).

The fact that jurisdiction may be obtained under both subsections for a tort committed outside the state requires only that jurisdiction under subsection (2) be imposed consistent with the constitutional requirements of due process. Thus, "minimum contacts" may be present under subsection (2) and jurisdiction thereunder may be appropriate even when it could not be achieved under the more stringent statutory requirements of subsection (3). The Georgia Supreme Court implied as much in *Clarkson Power Flow, Inc. v. Thompson:* "we note that limitations *similar* to those present in subsection ... [3] are constitutionally mandated under subsection [2]...." 244 Ga. 300, 301, 260 S.E.2d 9 (1979) (emphasis added). The possibility of looser jurisdictional requirements is not merely hypothetical, since this very result obtained under subsection (b) of the long-arm statute in *Value Engineering Co. v. Gisell,* 140 Ga.App. 44, 46, 48, 230 S.E.2d 29 (1976) (now subsection (2)). That case involved a shipment of radioactive material on a plane carrying the plaintiff as a passenger. The shipment originated in Washington and was en route to Louisiana. The defendant had no business dealings or other contacts with Georgia. Moreover, it had no control over the routing executed by the air carrier. The court held that because the defendant purposefully introduced an allegedly defective and dangerous item into the stream of commerce within the forum, it was subject to jurisdiction under subsection (b). The court disposed of the defendant's argument that subsection (c) rather than subsection (b) should control in the following language:

> [T]he General Assembly adopted subsection (c) ... not to restrict the applicability of subsection (b) but rather to liberalize the interpretation that this court had made of 'tortious act or omission within

this State.' Since the adoption of subsection (c) the Supreme Court has reversed this court's previously limited interpretation of subsection (b) and extended the exercise of jurisdiction over nonresident parties 'to the maximum extent permitted by procedural due process.'

*Id.* at 46, 230 S.E.2d at 32 (quoting *Coe & Payne v. Wood Mosaic Corp.,* 230 Ga. 58, 60, 195 S.E.2d 399 (1973)). Since the Georgia long-arm statute is thus co-extensive with the constitutional requirements of due process, this Court may exercise in personam jurisdiction over a nonresident tortfeasor for committing a foreign tort whenever those requirements are satisfied, even when it may not be possible to sustain jurisdiction under the language of subsection (c). *See also Shellenberger,* 138 Ga. App. at 406 n. 13, 227 S.E.2d at 267 n. 13 (referring to the proposition that subsection (3) has been "swallowed up" by subsection (2)). *But see* Note, *The Georgia Long-Arm Statute,* 11 Ga.L.Rev. 149, 176–81 (1976) (arguing that subsection (2) should not be construed to reduce the requirements of subsection (3) to unnecessary surplusage). *See generally* Ellington, *Trial Practice and Procedure,* 29 Mercer L.Rev. 265, 265–69 (1977).

The claims alleged are, in addition, adequately related to this defendant's activities in Georgia. When there is a battle of affidavits placing different constructions on the facts, the Court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981) (when the court elects not to conduct an evidentiary hearing, plaintiff need only make a prima facie showing of jurisdiction through its own affidavits and supporting materials, "notwithstanding any controverting presentation by the moving party...."). *See Jean v. Nelson,* 711 F.2d 1455, 1487 (11th Cir. 1983) ("The prima facie case ... is based solely on evidence presented by the plaintiff...."). This seems especially desirable when, as herein, the jurisdictional questions are apparently intertwined with the

merits of the case. *See generally* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–2], at 12–56 to –58 (2d ed. 1985).

The Court thus accepts the plaintiff's version of the purpose and consequences of Mr. Gerleman's visit, its version of Ms. Borger's solicitation activities in Atlanta, and its version of the nature of the payments involved. On this basis, the "minimum contacts" standard of due process is met, since it is apparent that the defendant PSI purposefully availed itself of the resources of the forum. Furthermore, PSI's continuing course of conduct and connection with Georgia, as alleged, are such that it should reasonably expect being haled into court here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 562. The claims alleged must arise out of or be "connected with" the defendant's activities in this state. *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). It is undisputed that they are. Nor can it be said that the exercise of jurisdiction offends traditional notions of "fair play" and "substantial justice." It has not been made clear that the burden on the defendant of defending this suit would be excessive, it would seem that Georgia has a significant interest in adjudicating cases involving the infringement of license agreements under the federal copyright laws entered into on its territory, and the plaintiff has a substantial interest in " 'obtaining convenient and effective relief.' " *Burger King Corp. v. Rudzewicz*, —— U.S. ——, ——, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. at 564). The defendant is not precluded, as a result of these findings, from litigating the issue of jurisdiction at trial.

Jurisdiction over Mr. Gerleman in his personal capacity is another matter. Nothing in the record indicates that Mr. Gerleman may be sued in this forum for actions taken here on his own behalf, nor would any such actions appear to be related to the subject matter of the lawsuit. The plaintiff has not attempted to demonstrate that the exercise of jurisdiction over Mr. Gerleman himself would be appropriate and has, consequently, failed to make a prima facie showing of jurisdiction. While the motion to dismiss must be denied as to PSI, it must be granted as to Mr. Gerleman in his individual capacity.

Finally, the defendants move to dismiss this action because of improper venue. The basis of this contention is that because personal jurisdiction cannot be maintained, venue may not lie in this district. In light of the foregoing discussion, this argument is without merit.

Accordingly, the defendants' motion to dismiss is GRANTED in part and DENIED in part.