71170. WALDSCHMIDT et al. v. CROSA et al.

(340 SE2d 664)

BENHAM, Judge.

Appellants, Mr. and Mrs. Waldschmidt, purchased a laundromat from appellee/defendant Crosa. Defendant Carolyn Robinson, an agent of V. R. Business Brokers, a company owned by defendant Phillip Kuban, acted as the sales broker. Dissatisfied with their purchase, and demanding that the sale be rescinded, appellants claimed that Crosa fraudulently misled them concerning, inter alia, the amount of income the laundromat had been producing and that Robinson and other defendants were Crosa's agents in perpetrating the fraud. When their demand for rescission of the sale was rejected, appellants sued Crosa and the others, alleging several causes of action, including the defendants' violation of the state and federal Racketeer Influenced and Corrupt Organizations Acts ("RICO Acts"). Count 5 of appellants' amended complaint was based on the Georgia RICO Act (OCGA § 16-14-1 et seq.), and Count 6 was based on the federal counterpart (18 USCA § 1961 et seq.). After discovery was conducted, appellee/defendant Crosa moved for summary judgment as to the RICO-related counts. After a hearing, the trial court granted Crosa's motion, stating that appellants' allegations did not set out the elements of a cause of action based on either the state or federal RICO laws.

Appellants here contend that their allegations did set forth the required elements, that there remained material issues of fact to be resolved, and that appellee Crosa failed to pierce any essential element of appellants' causes of action based on the RICO Acts. We affirm the trial court's decision in this matter of first impression before this court.

1. In Count 6 of appellants' amended complaint, they attempt to allege that Crosa violated 18 USCA § 1962 (a), (b), and (c). If Crosa violated one of the three subsections and appellants were injured thereby, they could recover treble damages. 18 USCA § 1962 (a) states: "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . ." Subsection (b) states: "It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Subsection (c) states: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Each of the three subsections requires that the *enterprise* in question be engaged in or have activities that affect interstate or foreign commerce; that element must be sufficiently alleged in the complaint in order to satisfy the jurisdictional requirement. "The activity of the enterprise, and not each predicate act of racketeering, must have an effect on interstate commerce. [Cits.]" *United States v. Boffa*, 513 FSupp. 444, 471 (1980). In Count 6 of appellants' complaint as amended, there is no allegation that Crosa's enterprise (the laundromat for purposes of 18 USCA § 1962 (c)) is engaged in interstate or foreign commerce. Appellants having failed to affirmatively show by the record that the jurisdictional requirement has been met, we conclude that the trial court's ruling insofar as it applies to § 1962 (c) is correct.

Further examination of appellants' complaint reveals that they attempted to proceed against Crosa for having violated 18 USCA § 1962 (a) and (b) by alleging that he received the proceeds from the laundromat sale through a pattern of racketeering activity and used those proceeds to establish his insurance adjusting business, another enterprise allegedly engaged in interstate commerce. Our review of

the pleadings again reveals a fatal omission. In order for appellants to have standing to bring an action under 18 USCA § 1962 (a), (b), or (c), they must allege "and can only recover to the extent that [they have] been injured in [their] business or property *by the conduct constituting the violation." Sedima, S. P. R. L. v. Imrex Co.*, U. S. Sup. Ct. Slip Op. No. 84-648, decided July 1, 1985, p. 17. (Emphasis supplied.) In the complaint before us, the conduct allegedly constituting Crosa's violation of subsections (a) and (b) is the use of his allegedly ill-gotten gain from the laundromat sale to establish or acquire his insurance business. There being no allegation that appellants were harmed by Crosa's establishment or acquisition of his new business, they have no grounds for suit based on those two subsections. Under those circumstances, the trial court was authorized to grant and did not err in granting partial summary judgment in Crosa's favor on Count 6 of the complaint, since there were no material issues of fact to be resolved. *Herring v. Pepsi-Cola Bottling Co.*, 113 Ga. App. 680 (2) (149 SE2d 370) (1966).

2. As for Count 5, appellants' claim under § 16-14-4 (a) and (b) of the Georgia RICO Act, we find that the trial court again acted properly in granting appellee Crosa's motion. OCGA § 16-14-4 (a) states that it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property or personal property of any nature, including money." Subsection (b) states that it is "unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." OCGA § 16-14-6 (c), like its federal counterpart, allows any person injured by reason of any violation of Code section 16-14-4 to recover treble the amount of actual damages sustained, along with other fees and costs.

After the Waldschmidts reviewed Crosa's written financial data for his laundry business, they asked Crosa, through defendant Robinson, to let them watch him remove the coins from the washer and dryer coin boxes each day for several consecutive days. This monitoring was supposed to give the Waldschmidts an idea of the amount of cash intake the machines were generating. Crosa complied, and for the first few days appellants personally witnessed the coin removal. They later asked Robinson to watch in their stead and report the results to them. Appellants contend that Crosa added money to the coin boxes ("salting") to persuade them to make the purchase and that that allegation creates an issue of fact whether Crosa's actions constituted conducting or participating in an enterprise through a pattern of racketeering activity. OCGA § 16-14-4 (b). They further argue that Crosa's admission that he received money from them for

the sale of his laundromat and used some of that money to start an insurance adjusting business is enough to sustain their claim under OCGA § 16-14-4 (a). We disagree on both points. With regard to the alleged salting, the only provision under which Crosa could be accused of racketeering activity is OCGA § 16-14-3 (A) (ix), which related to theft. Under the allegations and evidence presented, and assuming that appellants were deceived thereby into purchasing the property, Crosa committed only one theft, which occurred when he consummated the sale of the laundromat and obtained the proceeds. OCGA § 16-8-3 (a). One theft is, as a matter of law, insufficient to constitute a "pattern of racketeering activity." A pattern of racketeering activity means "engaging in at least two incidents of racketeering activity . . ." OCGA § 16-14-3 (2).

Additionally, we note that Crosa, in his affidavit submitted to support his summary judgment motion, stated that he did not operate the laundry so as to violate any criminal state or federal laws. In his deposition, appellant Mr. Waldschmidt also denied having knowledge of criminal law violations on Crosa's part. Hence, there is no question of fact whether Crosa committed two or more indictable criminal offenses so as to constitute the required pattern. That being so, he could not be subject to civil prosecution under Georgia's RICO Act. OCGA § 16-14-3 (3) (A) and (B); OCGA § 16-14-4 (a) and (b).

As for Crosa's admitted receipt and reinvestment of funds, since the funds were not obtained through a pattern of racketeering activity, his actions regarding the use of said funds were not prohibited by Georgia RICO, OCGA § 16-14-4 (a).

Appellants also claim that defendant Robinson, acting as Crosa's agent, committed the federal offenses of wire fraud when Robinson called appellants in Illinois, allegedly to report the amount of cash she saw Crosa remove from the machine coin boxes, and committed mail fraud when she disseminated allegedly false financial documents that showed the revenues generated by the laundromat. Our review of the complaint, including the paragraphs cited to us by appellants, reveals no specific factual allegation that the mail was used at all by Crosa or Robinson with regard to the sale; it is only alleged that the financial documents were "shown to" the appellants. Moreover, in his deposition, Mr. Waldschmidt could not say in what way the information in the documents was false or fraudulent, except to point out an arithmetic error, and could not state that he would not have purchased the business if he had had more accurate and detailed financial information. See *Edelschick v. Blanchard*, 177 Ga. App. 410 (4) (339 SE2d 628) (1985). With regard to the wire transactions, the evidence presented does not show that defendant Crosa transmitted or caused to be transmitted in interstate commerce any information regarding or in furtherance of the alleged fraud. Although it is undis-

puted that Crosa communicated to Robinson the amount of money allegedly removed from the machines in appellants' absence, there is no evidence that Crosa was aware that appellants had left this state. The record, therefore, is devoid of any information that Crosa knew or reasonably could foresee that the information would be communicated in *interstate* commerce. That being so, there is no evidence that Crosa committed wire fraud within the meaning of 18 USCA § 1343. Compare *United States v. Calvert*, 523 F2d 895 (8th Cir. 1975).

There being no evidence that Crosa engaged in mail or wire fraud, we once again conclude that a pattern of racketeering activity did not exist as to him.

Finally, we note that OCGA § 16-14-2 (b) states the General Assembly's intent in passing the Georgia RICO Act: "[T]he intent of this chapter is to impose sanctions against [the] subversion of the economy by organized criminal elements and to provide compensation to private persons injured thereby. It is not the intent of the General Assembly that isolated incidents of misdemeanor conduct be prosecuted under this chapter but only an interrelated pattern of criminal activity, the motive or effect of which is to derive pecuniary gain. This chapter shall be construed to further that intent." It appears that in this case the trial court acted in accordance with the legislative intent.

For all of the reasons stated, we hold that the trial court acted correctly in granting Crosa's motion for partial summary judgment.

*Judgment affirmed. Banke, C. J., concurs. McMurray, P. J., concurs in the judgment only.*

DECIDED FEBRUARY 7, 1986.

*Peter F. Boyce, Donna N. Kemp*, for appellants.
*Eloise W. Newhard, Thomas W. Tobin, Quinton S. King*, for appellees.