**A.L. WILLIAMS CORPORATION**

v.

**Norman Tee FAIRCLOTH.**

No. C85–1677A.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 25, 1986.

Nickolas P. Chilivis, Chilivis & Grindler, Atlanta, Ga., for plaintiff.

King & Spalding, Atlanta, Ga., for Trust Co. Bank.

Harkleroad & Hardy, Atlanta, Ga., for defendant.

Wilmer, Cutler & Pickering, Washington, D.C., for plaintiff.

Irwin W. Stolz, Jr., Gambrell, Clarke, Anderson & Stolz, Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

In an order dated December 27 1985, this court authorized the release of proceeds of the sale of A.L. Williams stock currently being held in the registry of the court. The action is now before the court on Williams' motion for reconsideration of that portion of the December 27 order and on defendant Faircloth's renewed and supplemental motion to dismiss. In addition, plaintiff has sent this court a letter, suggesting that a decision on the motion for reconsideration be deferred pending further discovery. This request, which runs counter to the restrictions on letter communications set forth in Local Rule 215–2(b), will be denied.

In the December 27 order, this court reasoned that by the filing of the complaint in this action, Williams had placed in dispute the appropriate ownership of the securities, thereby making interpleader of these securities appropriate. Subsequently, Williams agreed to allow the securities to be sold, with the proceeds deposited into the registry of the court. The court then concluded that since the shares themselves could no longer be returned to Williams, the controversy had been reduced to a claim for damages which no longer justified holding these proceeds. Thus, Williams' motion requires consideration of two distinct issues: (1) whether Williams' claim for rescission is legally or factually moot; and (2) if the rescission claim is not moot, is it appropriate for these proceeds to be held in the registry of the court.

Insofar as the December 27 order held that Williams' claim for rescission was mooted by virtue of the sale of the securities, the court now concludes that the order was erroneous. Initially, the court notes that in the May 10, 1985 order of this court, which was consented to by defendants' counsel, the parties stipulated that "by selling the stock and executing said documents neither party waives any rights to rescission or any other rights they may have in this case, and the sale of the stock and its being substituted by cash will not affect the merits of this litigation." In view of this stipulation, the court agrees with Williams that the defendant should not now be heard to claim that Williams has lost its right to seek rescission. Moreover, the court also agrees with Williams that the sale of the securities does not, as a matter of law, foreclose Williams from bringing a claim for rescission. *See, e.g., Myzel v. Fields,* 386 F.2d 718, 742 (8th Cir.1967); *American General Ins. Co. v. Equitable General Corp.,* 493 F.Supp. 721, 758 (E.D. Va.1980).

The remaining question then is whether it is appropriate to retain the proceeds, in lieu of the shares, in the registry of the court. Defendant contends that the proceeds should be released because the continued retention of the proceeds effectively amounts to a prejudgment attachment. While this argument is not without appeal, it is nonetheless the case that this view was previously considered and rejected by the court in allowing the shares to be placed in the registry of the court in accordance with the provisions of the stock escrow agreement. The court is not convinced that a different result should be obtained simply because the proceeds have now been substituted for the shares.

Defendant originally moved to dismiss Williams' claim for rescission on the ground that Williams failed to seek rescission promptly after having notice of the alleged fraud. The court did not reach this argument in the December 27 order because the court believed the rescission claim to be moot. The court has now reconsidered this conclusion and, accordingly, the defendant's motion to dismiss the rescission claim on the basis of untimeliness must be addressed. Plaintiff's prayer for rescission is included in Counts I (§ 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5), II (§ 29(b) of the Securities Exchange Act of 1934), V (RICO), VII (Georgia RICO), X (common law) and XII (breach of subscription agreement). Both parties, however, have addressed the motion to dismiss on the basis of untimeliness

as applicable to all counts of the complaint and the court will accordingly do likewise.

Defendant points out that he originally purchased the securities from Williams on May 18, 1981. The complaint alleges that in June 1983, Trust Company Bank, the escrow agent, transferred shares of Williams stock to the individuals who purchased the shares from the defendant. Thus, it is clear from the complaint and the plaintiffs' briefs that at the latest, Williams had actual knowledge of the alleged fraud by June 1983. Defendant notes that despite Williams' knowledge of the allegedly fraudulent transaction, Williams took no action to seek rescission of the purchase until the filing of the instant complaint on February 21, 1985. Defendant argues that Williams' failure to seek rescission for this period of time should bar Williams' attempt to obtain equitable rescission at this time. *See Baumel v. Rosen*, 412 F.2d 571, 574 (4th Cir.1969); *Johns Hopkins University v. Hutton*, 488 F.2d 912, 916 n. 12 (4th Cir.1973).

Williams raises several arguments in response to this motion. Williams points out that the issue of promptness is generally a question of fact which should be submitted to the jury rather than decided on a motion to dismiss. Williams also argues that under the circumstances of this case, it acted promptly in seeking rescission. In particular, Williams notes that half of the shares sold to the defendant were being held in escrow and, thus, Williams argues that any delay in seeking rescission could not have prejudiced the defendant. Williams also notes that it filed this action within the statute of limitations for fraud actions, although, as Williams admits, this is not dispositive with respect to the equitable remedy which it seeks. Finally, Williams argues that the defendants' fraudulent conduct should prevent him from appealing to an equitable defense of untimeliness.

 The court is not persuaded by Williams' contentions. While it is true that the question of timeliness depends upon the facts of a particular case and therefore would ordinarily be a question for the jury,

*see Newton v. Burks*, 139 Ga.App. 617, 229 S.E.2d 94 (1976), in this case the pertinent facts are undisputed and are set forth in the complaint. There is no factual dispute regarding when Williams had knowledge of the allegedly fraudulent transactions. Rather, Williams' complaint and briefs concede that at the latest, it knew of the alleged fraud by June 1983. Indeed, Williams brief makes it clear that it knew of these transactions by April 1983, when it was contacted by counsel for the purchasers. "It is incumbent upon a party who attempts to rescind a contract for fraud to repudiate it promptly on discovery of the fraud." *Woodall v. Beauchamp*, 142 Ga. App. 543, 236 S.E.2d 529 (1977). Despite Williams' actual knowledge of the alleged fraud of which it now complains, Williams took no action to seek rescission of the sale of shares to Faircloth until it filed this complaint on February 21, 1985, a period of nearly two years.

 Nor is the court persuaded that the holding of half of the shares in escrow is significant with respect to the timeliness of Williams' claim. A claim for rescission requires that a party act promptly upon discovery of the fraud. The fact that the property itself is tied up does not excuse this requirement. Moreover, Williams' delay in asserting this claim has clearly prejudiced Faircloth. Had this matter been resolved in a timely manner, upon satisfaction of the escrow conditions Faircloth would have been entitled to receive either the securities or his consideration. Instead, Williams' delay in asserting the claim has deprived Faircloth of access to either the securities or to his consideration during the pendency of this litigation.

The court notes that a requirement that a party act promptly to rescind a fraudulent sales transaction would seem to be particularly appropriate in securities transactions where the value of the property may fluctuate greatly. A party who has actual notice of fraud in the transaction should not be allowed to sit back for over a year and a half and allow the market to change before electing to seek rescission.

Finally, the court rejects Williams' argument that because this action alleges fraud by Faircloth, a challenge to the timeliness of the rescission claim cannot be raised. The obvious effect of this view would be to eliminate the timeliness requirement for rescission claims involving securities transactions. In sum, the court agrees with the defendant that Williams sat on its rights for almost two years, thereby prejudicing the defendant by denying him access to his property. Williams' complaint accordingly fails to state a claim for rescission. *See Bosse v. Crowell Collier and Macmillan*, 565 F.2d 602, 613 n. 15 (9th Cir.1977).

Defendant also moves to dismiss the counts which allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Plaintiff's RICO claims are framed in three counts: Count III, which seeks treble damages; Count IV, which seeks injunctive relief preventing further sales by the defendant of Williams stock; and count V, which seeks rescission. Count IV is clearly moot by virtue of the fact that the defendant no longer owns any Williams stock. The viability of Williams' claim for rescission has already been discussed. This claim also appears to be moot in that the plaintiff is seeking, by rescission, to eliminate the defendant's ownership interest in Williams. *See* Complaint at ¶ 70. The court will address Williams' claim for treble damages under 18 U.S.C. § 1964(c).

Defendant argues that the plaintiff has failed to state a claim under RICO because the complaint does not allege a "pattern of racketeering activity." Defendant relies on the Supreme Court opinion in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), in which the court stated:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern".

*Id.* at 3285 n. 14. Defendant contends that the complaint merely alleges one wrongful act, making false representations in the subscription documents, and that accordingly, the RICO counts must be dismissed.

Plaintiff argues that the complaint alleges more than one wrongful act. Plaintiff contends that the fraudulent conduct included prospecting for potential purchasers of the stock; making knowing misrepresentations in two separate documents signed on May 18, 1981; engaging in fraudulent transfers of the stock in May and July 1981; making other agreements to further these transfers in October and November 1981; and providing fraudulent representations in the Escrow Agreements signed in March 1982.

The RICO statute provides a civil remedy for any person injured in his business or property by reason of a violation of section 1962. Williams alleges that the defendant violated sections 1962(b), (c), and (d).

Section 1962(b) provides as follows:

It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Under the definitional section of RICO, 18 U.S.C. § 1961, a " 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" is defined in section 1961(1), as meaning, *inter alia,* any act which is indictable under the mail or wire fraud statutes, or any offense involving fraud in the sale of securities. An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

With respect to plaintiff's allegation of a violation of section 1962(b), plaintiff contends that the defendant, through at least two acts of mail, wire, or securities fraud, acquired an interest, in the form of common stock, in A.L. Williams, an enterprise engaged in interstate commerce. *See* complaint at ¶ 58. Closer scrutiny of the complaint, however, reveals that the defendant actually acquired his Williams stock through a single, allegedly fraudulent, transaction. Clearly the sale of Williams stock by Faircloth could not result in the acquisition of an interest in Williams. Because the complaint only alleges a single fraudulent transaction in which Faircloth acquired an interest in Williams, plaintiff has not stated a claim for relief by reason of a violation of § 1962(b).

Section 1962(c) states as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

Plaintiff alleges the existence of two enterprises relevant to this section: Faircloth himself, and the association in fact of defendant Faircloth with the persons to whom he sold shares of plaintiff's common stock. Plaintiff contends that Faircloth's actions constituted at least two violations of section 1962(c), in that Faircloth "in connection with his association with at least two enterprises ... conducted or participated in the conduct of the affairs of those enterprises through a pattern of racketeering activity."

In the language of RICO, plaintiff has alleged that Faircloth, in association with himself, conducted his affairs or participated in the conduct of his affairs, through at least two acts of mail, wire, or securities fraud. The Eleventh Circuit has held that a corporation may be simultaneously a defendant and a RICO enterprise. *United States v. Hartley,* 678 F.2d 961, 988 (11th Cir.1982). *Cf. Rae v. Union Bank,* 725 F.2d 478 (9th Cir.1984); *United States v. Computer Sciences Corp.,* 689 F.2d 1181 (4th Cir.1982). This court questions, however, whether an individual can be both a defendant and an "enterprise". The effect of such a ruling would seem to be to simply read the enterprise element out of section 1962(c) and to allow any person to be found liable under RICO for committing two acts of fraud. Because the issue has not been raised by the defendant, however, the court will not dismiss this claim on this ground.

Plaintiff has also alleged that the association-in-fact of defendant Faircloth with the persons to whom he sold shares of stock constitutes an enterprise within the meaning of section 1961(4). Initially, the court notes that it is questionable whether this association-in-fact, apparently a seller/purchaser relationship, is sufficient to constitute a RICO enterprise. *See, e.g. United States v. Hewes,* 729 F.2d 1302 (11th Cir.1984) ("[A] RICO enterprise exists where a group of persons associates, formally or informally, with the purpose of conducting illegal activity."); *United States v. Weinstein,* 762 F.2d 1522 (11th Cir.1985) ("[T]he definitive factor in determining the existence of a RICO enterprise was an association of individuals, however loose or informal, which furnishes a vehicle for the commission of two or more predicate crimes (the pattern of racketeering activity requisite to the RICO violation)). Again, this issue has not been raised or briefed by the parties.

Assuming the existence of a RICO enterprise, it must nonetheless be determined whether the plaintiff has alleged that the defendant participated in the conduct of the enterprise's affairs through a pattern of racketeering activity or whether, as argued by the defendant, the plaintiff has simply alleged a single fraudulent transaction. Resolution of this question turns on whether each sale of stock by Faircloth constituted an act indictable under the mail or wire fraud statutes or an offense involving fraud in the sale of securities. Although it is far from clear that each sale of the stock could constitute indictable acts, as opposed

to only the fraudulent representations made to Williams, this issue has not been adequately briefed by either party. Because the court cannot unequivocably say that each sale would not be an indictable act, the court will deny defendant's motion to dismiss the plaintiff's claim for damages under RICO.

Plaintiff has also alleged violations of section 1962(d), which makes it unlawful for "any person to conspire to violate any of the provisions of subsections (a) (b), or (c)...." The court notes that the complaint contains no allegations of a conspiracy to violate the other RICO subsections.

Plaintiff's claim for damages under RICO, while apparently satisfying the technical language of section 1962(c), nonetheless demonstrates questionable use of an overly broad statute. The complaint itself makes it clear that a single transaction, in which the defendant allegedly made fraudulent representations in the process of purchasing Williams' stock, forms the basis of the RICO claim. Although the court will allow the damage claim to proceed, the court is dubious that the statute was intended to encompass the creative pleading demonstrated in the instant complaint. Moreover, and perhaps more troubling, the plaintiff's use of the RICO statute appears to typify the complaint as a whole. Plaintiff seeks damages under the federal securities laws yet the only damages alleged are attorneys' fees and the expenditure of management time. Plaintiff sought to rescind the sale of the securities to the defendant, yet waited nearly two years after it learned of the alleged fraud before taking any action, and then consented to the sale of the shares. While the court would not by any means wish to condone the use of fraudulent representations during the course of a stock purchase, the court is nonetheless skeptical of the plaintiff's reaction to this allegedly fraudulent transaction.

Accordingly, defendant's motion to dismiss the plaintiff's claim for rescission is GRANTED. Because the rescission claim has been dismissed, there is no longer any reason to hold the proceeds of the sale in the registry of the court. The clerk is authorized and directed to draw a check on the funds in the Registry of this Court in the principal amount of $1,441,985.00 plus all interest earned, payable to Norman Tee Faircloth (S.S. # 255–62–5579), 3395 Osborne Place, Macon, GA. 31204, and mail or deliver the check to Norman Tee Faircloth. Defendant's motion to dismiss plaintiff's claim for damages under RICO is DENIED.

SO ORDERED.