## GEORGIA GULF CORPORATION

v.

### Wilbur J. WARD, et al.

### No. C–87–1404–A.

United States District Court,
N.D. Georgia, A.D.

Dec. 31, 1987.

Thomas A. Pogue, Atlanta, Ga., for plaintiff.

William T. Hudson, Decatur, Ga., for defendant.

## ORDER

O'KELLEY, Chief Judge.

This case was submitted to the court for consideration of the motions to dismiss by defendants Watkins, Ward, Roskind and Holtrachem, Inc. ("Holtrachem"), defendant Watkins' motion to stay discovery, and the motion for leave to file a supplemental brief by defendants Holtrachem and Roskind. After careful consideration of the record and briefs of counsel, and for the reasons set out below, the court dismisses Count II (Georgia Rico), denies the motions to dismiss the remaining counts, and dissolves its August 11, 1987 temporary stay of discovery. Watkins' motion to stay discovery is denied as moot. Finally, the motion for leave to file a supplemental brief is granted.

### Factual Background

This is an action for fraud brought by Georgia Gulf Corporation ("Georgia Gulf") against two former employees ("Watkins" and "Ward"), a customer ("Holtrachem") and Holtrachem's President ("Roskind"). Georgia Gulf, formerly a division of Georgia Pacific, is a chemical manufacturer and supplier, and Ward and Watkins were sales supervisors for both Georgia Gulf and the predecessor chemicals division of Georgia Pacific. The complaint alleges that Roskind and Holtrachem controlled Carolina Nitrogen, a buyer of Georgia Gulf products, and that they encouraged Watkins and Ward to purchase ownership interests in that company.

The instant action is based upon an alleged kickback scheme orchestrated by these defendants. Georgia Gulf claims that Ward and Watkins received secret payments from Holtrachem and Roskind in two different ways: (1) direct and indirect payments from Holtrachem and Roskind to Ward; (2) payments to Ward and Watkins through "consulting fees" paid by Carolina Nitrogen, and through profits on the sale of their interests in Carolina Nitrogen. Georgia Gulf does not allege that any of the kickbacks presently at issue were related to sales of chemicals to Carolina Nitrogen. Rather, Carolina Nitrogen appears to have been a conduit for the payment of kickbacks to Ward and Watkins.

Georgia Gulf claims that this kickback scheme violated corporate policy, resulted in the breach of Ward's and Watkins' fiduciary duties, and otherwise defrauded Georgia Gulf of the faithful and honest services of its employees. The complaint contains four counts: Count I, violation of the feder-

al Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961–64, ("RICO"); Count II, violation of O.C.G.A. § 16–14–4(b) and (c) ("Georgia RICO"); Count III, breach of fiduciary duties under Georgia common law and O.C.G.A. § 10–6–25; and Count IV, fraud and conspiracy to defraud under Georgia common law.

### Discussion

The defendants have each moved to dismiss the complaint for lack of jurisdiction under Rule 12(b)(1), failure to state a claim for which relief can be granted under Rule 12(b)(6), and for failure to plead fraud with particularity under Rule 9(b). Fed.R.Civ.P. 9(b), 12(b)(1) & (6). Many of the defendants raise identical arguments in their motions to dismiss. A few of the arguments are unique. In light of this, and in an effort to succinctly state the reasoning supporting each of its rulings on the present motions, the court analyzes each Count individually, addressing all of the defendants' arguments, both shared and unique, which relate to the dismissal of that count.

### Count I: Federal RICO

#### Dismissal Under Rule 12(b)(6)

Each of the defendants moves to dismiss Count I, the Federal RICO count, for failure to state a cause of action. Fed.R.Civ.P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate only if the court determines that "the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Friedlander v. Nims*, 755 F.2d 810 (11th Cir.1985).

The defendants' principle argument for dismissal of the RICO count is that Georgia Gulf has failed to allege predicate acts sufficient to trigger RICO liability. Georgia Gulf alleged violations of both the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, as predicate acts under RICO. 18 U.S.C. § 1961(1). Specifically, Georgia Gulf contends that the defendants used the United States mails and interstate telephone wires in their scheme to "deprive it of the faithful and honest services of its agents [Ward and Watkins]." Complaint at para. 25.

The thrust of the defendants' argument to dismiss the RICO count is that the deprivation of the faithful services of an employee is not an injury to property under the mail and wire fraud statutes. The defendants further contend that because Georgia Gulf failed to allege sufficient predicate acts, the RICO count should be dismissed.

The defendants rely on the recent Supreme Court opinion of *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), for the proposition that mere deprivation of the faithful and honest services of an employee, absent proof of damage to property rights, is insufficient to constitute a violation of the federal mail and wire fraud statutes. The *McNally* defendants were public officials of Kentucky who had been convicted under the mail fraud statute for defrauding the state of their faithful and honest services by secretly diverting the payment of commissions on the award of state insurance contracts over which they had supervisory authority. *McNally, supra* 107 S.Ct. at 2877. The commissions themselves, however, were not the property of the state; the sole injury to Kentucky arose out of the fact that its officers were using their official positions to funnel insurance commissions to themselves and their friends. *Id.* at 2882. Significantly, the government had not charged or proved that Kentucky would have paid lower insurance premiums in the absence of this scheme. *Id.* Instead, the government simply argued that the defendants' conduct had deprived Kentucky of its intangible rights to honest and impartial government. *Id.* at 2877.

The Court in *McNally* began its analysis by explaining that the mail fraud statute protected property rights alone. *Id.* at 2811. The Court then noted that the state lost no property by the diversion of the commissions, and that the government had not argued that the state's insurance premiums would have been lower in the absence of the scheme to defraud. *Id.* at 2882. Accordingly, the Court reversed the mail fraud convictions, finding that the citizenry's interest in fair and honest government did not implicate any property right.

The RICO count in the instant case alleges a scheme to defraud Georgia Gulf of the faithful and honest services of its employees. This case might, on first impression, appear similar to *McNally*, and therefore appropriate for dismissal.[1] A more thorough reading of the complaint in its entirety, however, reveals some subtle yet dispositive differences.

■ The alleged scheme at issue here includes kickback payments to Ward and Watkins. Assuming the scheme is proven, Ward and Watkins breached their duties of loyalty to Georgia Gulf, whether they are considered to be agents or mere employees, by using their positions for their own personal benefit and to the detriment of the corporation. *Lane Co. v. Taylor*, 174 Ga. App. 356, 330 S.E.2d 112, 118 (1985).[2] Financial loss is a necessary implication of the existence of the kickback payments; Georgia Gulf did not receive as much profit on the sale of its products as it might otherwise have if the defendants had not conspired to withhold from it Holtrachem's implicit willingness to pay more for chemicals. The kickback payments, therefore, constitute lost profit opportunities to Georgia Gulf. *United States v. Conner*, 752 F.2d 566, 572–73 (11th Cir.1985), *cert. denied*, 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985).

It is the well-established law of this circuit that such kickback schemes deprive the employer of property. *Id.* at 573. When, as here, a breach of fiduciary duty and a conspiracy to defraud are accompanied by a deprivation of property, *McNally* constitutes no bar to recovery under the mail fraud statute. *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). Accordingly, the court finds that Georgia Gulf's allegations of mail and wire fraud are sufficient to constitute predicate acts under RICO.

*The Particularity Requirement Of Rule 9(b)*

All of the defendants argue that Georgia Gulf has failed to plead fraud with the particularity required under Rule 9(b). Fed.R.Civ.P. 9(b). "The particularity requirement of Rule 9(b) does not abrogate the requirement of Fed.R.Civ.P. 8(a) & (e) that the complaint set forth a short and plain statement of the claim, and that each averment should be 'simple, concise and direct.'" *Currie v. Cayman Resources Corp.*, 595 F.Supp. 1364, 1371 (N.D.Ga. 1984). *See Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir.1985). Further, Rule 9(b) does not require the setting out of "detailed evidentiary matter." *Id.* The Rule itself requires that the plaintiff allege the "circumstances constituting fraud." Fed.R.Civ.P. 9(b). When applied to a RICO claim based on mail or wire fraud, the plaintiff must allege "sufficient facts to put the defendants on notice of the charges [of a scheme to defraud and the use of the mails or wires in furtherance of that scheme]." 2A J. Moore & J. Lucas, *Moore's Federal Practice* para. 9.03[4], at 9–54, 55 (2d. ed. 1987).

■ Georgia Gulf has fulfilled the requirements of Rule 9(b). The scheme to defraud is set out explicitly, and Georgia Gulf has alleged how the mails and interstate wires were used in furtherance of the scheme. The court is unpersuaded by the defendants' argument that the complaint is deficient in that it fails to set forth the time, place and content of the alleged false statements. This particular requirement is applicable to RICO complaints based upon securities fraud, or other predicate theories which require proof of fraudulent misrepresentation. *See, e.g., Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Georgia Gulf's RICO action is not based upon misrepresentations, but rather,

1. While Georgia Gulf never alleges specifically how it's property interests were damaged by the kickback scheme, it does claim that it has been damaged in an amount no less than the sum of the kickback payments. Georgia Gulf filed its complaint without the benefit of the *McNally* opinion, and it probably assumed that a general allegation of deprivation of the faithful and honest services of its employees was sufficient. Its failure to allege specifically how it was damaged is not fatal, however, as the court finds that the defendants can glean such injury from the mere allegation of the scheme.

2. Holtrachem and Roskind's involvement in the alleged conspiracy bring them under RICO as well.

upon fraudulent deprivation of property and breach of fiduciary duties. While Georgia Gulf has not alleged the exact dates when kickbacks were received, the complaint clearly shows who received them (Ward and Watkins), who paid them (Roskind and Holtrachem), and how they were paid (indirectly through Carolina Nitrogen, or directly by Roskind and Holtrachem), and how the mails and wires were used in furtherance of the scheme. Failure to state the dates and times of receipt of kickbacks is not fatal to the complaint, as the defendants have been apprised of the nature of the action against them, and are therefore on notice of sufficient allegations upon which to mount a defense. The court, therefore, concludes that Georgia Gulf has pled fraud with particularity as to all four counts in the complaint.

### Holtrachem As Both "Defendant" And "Enterprise" Under RICO

■ Holtrachem moves to dismiss Count I on the ground that it has been named as both a "defendant" and the "enterprise" under the RICO statute. 18 U.S.C. § 1962(a). Citing an opinion from this district, Holtrachem urges this court to ignore the law of this circuit, as expressed in *United States v. Hartley*, 678 F.2d 961 (11th Cir.1982), *cert. denied*, 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983), which teaches that a plaintiff may identify a corporation as both a defendant and a RICO enterprise. *A.L. Williams v. Faircloth*, 652 F.Supp. 51 (N.D.Ga.1986). This court need not comment on the wisdom or continued vitality of the *Hartley* decision as it concludes that Holtrachem's argument fails on other grounds. Even if the court found that Holtrachem could not be named as both an enterprise and a defendant, the RICO count itself would survive as to Holtrachem because Carolina Nitrogen is also identified in the complaint as an enterprise, and Holtrachem is alleged to have used this enterprise in its scheme to defraud Georgia Gulf.

### Holtrachem's RICO Liability Under The Doctrine Of Respondeat Superior

■ Holtrachem alternatively argues that Georgia Gulf's RICO claim fails because it is impermissibly grounded upon a theory of respondeat superior. Holtrachem argues and cites authority from other circuits for the proposition that respondeat superior cannot be the sole basis for RICO liability. *See, e.g., Luthi v. Tonka Corp.*, 815 F.2d 1229, 1230 (8th Cir.1987).[3] In the instant case, however, Georgia Gulf has advanced another theory of RICO liability against Holtrachem; namely, direct liability for Holtrachem's own fraudulent actions. Georgia Gulf has alleged that Holtrachem itself was involved in the scheme to defraud, as well as in the conduct of the business affairs of Carolina Nitrogen, an alleged corporate conduit for the payment of kickbacks to Ward and Watkins. While a corporation can only act through its agents, such as President Roskind in the instant case, it is nonetheless directly liable for its own torts under circumstances where its agent acts pursuant to express authority. Georgia Gulf has alleged enough in its complaint to support the inference of such express authority. The court therefore concludes that Georgia Gulf has adequately alleged a RICO violation by Holtrachem on a theory of direct liability, regardless of any respondeat superior defense.

### Ward's Standing Argument

Ward argues that Georgia Gulf has no standing to sue him under RICO as it has not alleged an injury to property as required under 18 U.S.C. § 1964(c). The court has previously concluded that Georgia Gulf has alleged sufficient injury for RICO purposes. *See supra* text at 1558–59. Accordingly, the court finds no merit in Ward's contention.

### Roskind's Personal Jurisdiction Argument

Roskind argues that the court should dismiss the entire complaint as to him for

---

**3.** Unlike the defendant corporation in *Luthi*, Holtrachem stood to profit from the success of the alleged fraudulent scheme. The *Luthi* court refused to hold the corporation vicariously liable under RICO where the pleadings revealed that it had been duped by its own chief executive officer, and was actually injured by the scheme to defraud. In the instant case, Holtrachem was not such a victim.

want of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). Roskind is a resident of Massachusetts and the president of Holtrachem. He contends that Georgia Gulf has failed to allege the minimum contacts with this forum necessary to invest this court with personal jurisdiction over him in his *individual* capacity. O.C.G.A. § 9–10–91(3). Specifically, Roskind argues that in the absence of a showing of significant business contacts with the state, the Georgia Long Arm Statute does not permit an action in this forum for a non-resident's out-of-state torts which cause injury within the state.

While subsection (3)[4] of the Georgia Long Arm Statute requires a showing of business contacts in order to perfect personal jurisdiction, the Georgia courts·have interpreted subsection (2)[5] broadly to permit actions in Georgia against nonresidents whose torts outside of the state cause injury within the state. *Psychological Resources Support Systems, Inc. v. Gerleman*, 624 F.Supp. 483 (N.D.Ga.1985); *Clarkson Power Flow, Inc. v. Thompson*, 244 Ga. 300, 260 S.E.2d 9 (1979); *Coe & Payne Co. v. Wood–Mosaic Corp.*, 230 Ga. 58, 195 S.E.2d 399 (1973).

The court in *Psychological Resources* cites a Georgia appellate opinion as instructive of the appropriate standard for determining personal jurisdiction under subsection (2). *Psychological Resources, supra* at 485 (citing *Shellenberger v. Tanner*, 138 Ga.App. 399, 227 S.E.2d 266 (1976)). This standard permits personal jurisdiction under subsection (2) when: (1) the nonresident has purposely done some act or consummated some transaction affecting an interest of a resident of this forum, regardless of whether the nonresident was physically in the forum at that time; (2) the plaintiff has a legal cause of action against the nonresident arising out of that activity; and (3) the exercise of jurisdiction based upon the "minimum contact" is "reasonable." *Id.*

■ The court finds that Georgia Gulf has alleged sufficient facts to fulfill the requirements of personal jurisdiction under subsection (2), as outlined in the test above. First, Roskind is alleged to have conspired to defraud Georgia Gulf, a corporation whose principal place of business is located in Georgia. Second, the court has concluded that Georgia Gulf has a valid RICO claim against Roskind. Finally, the court finds that Roskind's involvement in the conspiracy to defraud Georgia Gulf constitutes sufficient contacts with this forum to make its exercise of personal jurisdiction over him "reasonable." Accordingly, the court rejects Roskind's argument that Georgia Gulf has alleged insufficient facts to invest this court with personal jurisdiction over him in his individual capacity.

### Counts II, III & IV: The State Law Claims

The remaining counts in the complaint, Counts II, III, and IV, are state law claims. All of the defendants argue that if the court dismisses the RICO claim, these pendent state law claims should be dismissed as well. Fed.R.Civ.P. 12(b)(1). As the court has concluded that Georgia Gulf has alleged a viable RICO claim, it declines to dismiss the pendent state law claims.

### Count II: Georgia RICO

The defendants argue that the Georgia RICO claim should fail because it is based upon a theory of federal mail and wire fraud that the Supreme Court expressly rejected in *McNally*. The court rejects this argument as it has concluded previously that *McNally* does not preclude the instant RICO claim. *See supra* text at 1558–59.

The defendants' argument that the Georgia RICO count should be dismissed for failure to allege an organized crime nexus

---

**4.** Subsection (3) allows personal jurisdiction over a nonresident who:
> [c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. § 9–10–91(3).

**5.** Subsection (2) provides that personal jurisdiction can attach to a non-resident who "[c]ommits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act." O.C.G.A. § 9–10–91(2).

is more problematical. The defendants cite the statute's statement of intent for the proposition that Georgia RICO applies only to organized crime. The statement is set out below:

> The General Assembly declares that the intent of this chapter is to impose sanctions against the subversion of the economy by organized criminal elements and to provide compensation to private persons injured thereby. It is not the intent of the General Assembly that isolated incidents of misdemeanor conduct be prosecuted under this chapter but only an interrelated pattern of criminal activity, the motive or effect of which is to derive pecuniary gain. This chapter shall be construed to further that intent.

O.C.G.A. § 16–14–2(b).

■ The defendants have cited no Georgia cases expressly construing this statute to require an organized crime nexus.[6] The two Georgia federal district courts which have addressed this exact issue disagree on the necessity of an allegation of an organized crime nexus. *Stanton v. Shearson Lehman/American Express, Inc.*, 622 F.Supp. 293 (N.D.Ga.1985) (finding no requirement of an organized crime nexus); *Doxie v. Ford Motor Credit Co.*, 603 F.Supp. 624 (S.D.Ga.1984) (finding such a requirement). After carefully considering the matter, and in light of the express language of section 16–14–2(b), the court respectfully disagrees with *Stanton,* and finds that a Georgia court squarely confronted with this issue would require the plaintiff to allege an organized crime nexus. Accordingly, the court dismisses Count II, the Georgia RICO count.

*Counts III & IV: Breach Of Fiduciary Duties And Fraud & Conspiracy To Defraud Under Georgia Common Law*

*Pleading With Particularity Under Rule 9(b)*

All of the defendants argue that counts III and IV should be dismissed for failure to plead one or more of the following with particularity: damages, fraud or breach of fiduciary duties. The court rejects these arguments as it found above that the RICO claim adequately alleged how the scheme to defraud injured Georgia Gulf's property, and further rules that the breach of fiduciary duties was adequately alleged. *See supra* text at 1558–59.

*Watkins' Georgia Public Policy Argument*

Watkins raises a specious argument that Georgia public policy precludes this cause of action. O.C.G.A. § 1–2–6. Watkins contends that the complaint should be dismissed to the extent it relies upon a breach of a corporate agreement with employees forbidding them from accepting kickbacks, as such an agreement violates his personal liberty and property interests. This argument is considered and rejected as meritless.

*Ward And Watkins' Argument That They Breached No Fiduciary Duties Owed To Georgia Gulf*

■ The court finds that whether considered agents or employees of Georgia Gulf, Ward and Watkins breached duties of loyalty they owed to the corporation by using their positions for their own personal benefit and to the detriment of the corporation's property rights in the profits lost through the kickbacks. *Lane Co. v. Taylor,* 174 Ga.App. 356, 330 S.E.2d 112 (1985). Accordingly, the court rejects their argument that the alleged scheme to defraud had not breached their fiduciary duties to Georgia Gulf.

*Dismissal Of The Complaint To The Extent It Seeks Recovery For Actions Occurring Prior To The Formation Of Georgia Gulf, Or More Than Four Years Before June 24, 1984 Under The Applicable Statute Of Limitations*

The court need not address these arguments as they will not lead to the dismissal

---

**6.** The defendants cite *Waldschmidt v. Crosa,* 177 Ga.App. 707, 340 S.E.2d 664 (1986) in support of a requirement of an organized crime nexus. The *Waldschmidt* court quotes the language of O.C.G.A. § 16–14–2–(b), but does not clearly state that the Georgia Rico statute requires an allegation of an organized crime nexus.

of any claim. These issues relate to the extent of damages, and, perhaps, to certain evidentiary matters which the parties may address at pretrial.

### Conclusion

The court has considered the plethora of arguments espoused by the defendants in this case and has rejected them all, with the exception of the motion to dismiss Count II, the Georgia Rico count. Accordingly, the court dismisses Count II, denies the motions to dismiss the remaining counts, dissolves the temporary stay of discovery, denies as moot the motion to stay discovery, and grants the motion for leave to file a supplemental brief.

IT IS SO ORDERED.